DAILEY ET AL. *v.* DAILEY.

[No. 19,010. Filed April 16, 1958. Rehearing denied May 13, 1958. Transfer denied June 18, 1958.]

*Melvin Thornburg, John D. Staggenburg,* and *Salyer & Woolbert,* all of Anderson, for appellants.

*John R. Walsh,* of Anderson, for appellee.

PFAFF, J.—From the record in this cause as reflected by the brief of the parties, it appears that the appellee and the appellant, Barbara Jene Dailey, were divorced on March 19, 1955 on complaint of appellee. The child whose custody is here involved was born January 26, 1952. On February 11, 1955, upon an agreed statement of facts, the temporary custody of the child was granted to the appellants, Chester Cook, Sr., and Helen Cook, maternal grandparents of the child. Upon trial, on March 19, 1955, an absolute divorce from appellant Barbara Jene Dailey was awarded appellee, and the custody of the child was given to said maternal grandparents until further order of the court.

On the date and at the time of said divorce decree and the said award of the custody of said child, the appellee was in the United States military service but home on furlough for the purpose of said action. Appellee was discharged from the military service on October 19, 1955, and on November 21, 1955, he filed his original verified petition for modification of the custody order in the divorce decree. This petition was amended and filed, unverified, on April 18, 1956.

The appellee's said amended petition for modification alleged that since the granting of the divorce certain changes of conditions had taken place affecting the child and the parties and that the decree should be modified by awarding him the care and custody of the child.

It further appears that in the proceedings for divorce in 1955, the appellee petitioned the court that the temporary custody of said child be awarded to his mother, Opal Pauline Dailey. The court fixed a date for the hearing and thereafter the appellants, Chester Cook and Helen Cook, filed their petition for the temporary custody of said child, alleging, among other things, that the child had been in their care and custody most of the time from January, 1953. Upon the hearing of both said petitions and upon an agreed statement of facts (said agreed statement of facts is not disclosed by the record), the court found and ordered that appellants, Chester Cook and Helen Cook, are "fit and proper persons to have the temporary care and custody" of said child. Thereafter, as before stated, the court granted the divorce to appellee on March 19, 1955, and awarded the custody of the child to said maternal grandparents, Chester Cook and Helen Cook, until further order of the court. No visitation privileges or removal rights were made in the final order giving custody to the maternal grandparents.

The change of conditions alleged in said amended modification petition were, in substance:

a. That appellee was discharged from military service on October 19, 1955;

b. That appellee has been unable to get the child except for brief periods on Sundays, and that on one or two occasions he was refused the child "even on a Sunday.";

c. That the child's welfare and happiness is being affected by the turmoil created by the uncertainty as to whether the child will live with the grandparents or the appellee;

d. That the child is not being properly cared for, is not gaining weight, has been ill with colds and is not properly dressed;

e. That Barbara Jene Dailey, mother of the child, is morally unfit to be around the child; and

that she is with the child for great lengths of time;

f. That the maternal grandparents have been unsuccessful in rearing their own children;

g. That the home of the grandparents is not a good and proper home for the rearing of the child;

h. That since his discharge appellee has resumed living with his parents; that he has a good job; that he is attempting to get a college education; that there is plenty of room in a modern home for the child to have its own room and live in a Christian atmosphere.

i. That he now is in position to take the child and rear it.

Upon hearing the evidence on said amended modification petition and the answers thereto of the appellants, the court, on June 23, 1956, found for appellee on his petition and awarded him the care and custody of the child, with reasonable visiting privileges in the appellants. No petition or prayer for the temporary or permanent custody of the child was ever made by its mother, the appellant, Barbara Jene Dailey.

Appellee's complaint for divorce prayed that the care and custody of the child be granted to him and, at the time of the hearing on the complaint, there was no petition or request by anyone for the custody of the child, other than that contained in appellee's complaint. No particular or special reason or finding is recited in the court's divorce decree as the basis of the custody award to the maternal grandparents and it must be presumed, in favor of the decree, that with the record of the entire proceedings in the cause before it and the evidence given at the trial, the court determined that the award it made as to the care and custody of the child was for its best interest and welfare. There is nothing in the record to indicate that the court awarded the custody to the maternal grand-

parents because appellee was then in the military service nor because it did not consider the home of the appellee's parents as a suitable home for the child. Reference thus made to the record and judgment in the divorce proceedings is required by reason of the fact that the parties erroneously predicate some of their contentions thereon, the appellants asserting that the trial court apparently did not consider the home of appellee's parents as suitable for the child, and the appellee alleging that we can take judicial knowledge that a member of the armed services cannot be charged with the care of the child and "the trial court properly recognized that fact" in making the custody award.

We may recognize, of course, that a father away in the military service of his country is in no position to look after and care for a three-year-old female child, not only by reason of his own inability so to do, but by reason of the nature, purpose and circumstances of military endeavors. However, in the absence of any finding or decree therefor, such considerations would not establish that the custody of the child was given the maternal grandparents solely by reason of and only for the duration of appellee's military service, as is intimated in appellee's brief. The record reveals that the child had been in the care and custody of the maternal grandparents most of the time from its birth to the time of the divorce hearing. Such fact was no doubt given consideration by the court in the making and entry of the divorce decree in which the custody of the child was awarded to the maternal grandparents.

Some of appellee's allegations of change of conditions were not substantiated by evidence and some, even if there had been evidence to support them, would not constitute a change of conditions occurring since the original custody award. The contest here was not

between the appellee and appellant, Barbara Jene Dailey, as the parents of the child, but between appellee, the father, and the maternal grandparents. The insufficiency of the evidence to sustain most of the allegations of change of conditions could be dwelt upon but appellee makes it unnecessary by the forthright statements made in his brief.

Appellee says: "Appellee agrees that the record shows little, if anything, derogatory against the appellants, Chester Cook, Sr., and Helen Cook, maternal grandparents, but this same record shows nothing detrimental or derogatory against the appellee, Gerald Wayne Dailey. Therefore, we have a case presented to this court affecting the rights to the custody of a little girl as between her own father and her maternal grandparents." And, further: "Again I wish to point out that the appellee does not charge the appellants, Chester Cook, Sr., and Helen Cook, with failing to provide a home, clothing, or food for Connie Jene Dailey . . . ." In fact, appellee presents no argument that there was any material change of conditions as to the maternal grandparents since the original custody decree, but rests his case upon the contention that a sufficient change of conditions has been shown in that when the original order was made he was in the military service and, therefore, unable to take the custody of the child, but that he is now out of the service, has good employment, is endeavoring to secure an education, lives with his parents in a modern, five-room bungalow-type home, and "the Dailey family" has "more space in which to rear and keep their granddaughter"; and upon the additional contention that to deny him the right to "bring up his daughter" would be to deny him his constitutional right "not only to beget and bring up children, but to direct the

manner of their education," citing 39 Am. Jur., *Parent and Child,* §6, note 14, page 594, and that to "deny a discharged veteran his own child would be establishing a dangerous precedent."

The question at hand would be shorn of much of its difficulty were it apparent from the record that the court had made the original custody order upon the basis of the fact that appellee was then in the military service. But, as previously stated, the record discloses no such basis and the order, therefore, must be presumed to have been so made because the court, in its judicial discretion, considered such placement to be for the best interest and welfare of the child. Whether the court then gave any consideration to the situation to be created by the return of the veteran to civilian life does not appear. However, in any event, the custody order then entered by the court was not of temporary duration but was permanent.

It seems to us that under the circumstances of this particular case, as exhibited by the record and reference to which has been heretofore made, that the return of the appellee father from his service to his country in the military to his home and civilian life within seven months from the time of the original custody decree, and his subsequent engagement in gainful employment and securance of a suitable and adequate modern home for the child, none of which existed at the time of the original order, constituted such a change of conditions since the original award as to warrant the trial court in hearing and determining his modification petition. Said petition was filed within approximately one month after his return and before the passage of time had permitted "the affections of the child and its . . . (maternal grandparents) . . . (to) become so interwoven that to sever them would seriously mar and endanger the

future welfare and happiness of the child." (Quotes from *Beach* v. *Leroy* (1950), 228 Ind. 122, 126, 89 N. E. 2d 912.) Nothing derogatory to the character and fitness of the appellee to be granted the custody of the infant appears in the record.

In all instances involving the custody of infants, the compelling influence is the welfare of the child, without reference to the wishes of the parties, their parental rights, or their contracts. *Garner* v. *Gordon* (1872), 41 Ind. 92; *Beach* v. *Leroy, supra.* It is for the courts to whom the question of the best welfare of the child is presented by interested parties contending for their rights of custody, "to use the highest judgment with which they are endowed in determining the question at the time and under the evidence presented. . . . they must exercise a sound discretion in its determination, having in view always that which is best for the present and future welfare and happiness of the child." *Beach* v. *Leroy, supra.*

In fixing the care and custody of the infant, the finding and judgment of the trial court is conclusive unless from the record it appears that the trial court has abused its discretion. *Beach* v. *Leroy, supra.* Here the court heard evidence as to the age, health and disposition of the child, the home conditions and facilities offered by the contending parties, the treatment given the child, the relations of the parties to one another, the opportunities afforded by the respective parties for the education and religious affiliations of the child, the character, reputation and fitness of the respective claimants to right of custody, and other matters deemed pertinent to the issue presented.

Under the decisions and opinions of our courts ordinarily a parent who is of good character and rea-

sona‌bly able to provide for his child is entitled
to its custody as against others. *Gilchrist* v.
*Gilchrist* (1947), 225 Ind. 367, 371, 75 N. E. 2d
417.

While the rights of the parent are not absolute, of
course, and must yield to the welfare of the child,
yet they are a proper subject for considera-
tion by the court in determining the right
to custody upon the whole evidence intro-
duced.

> "The disposition of children presents a delicate
> and perplexing task which has taxed the wis-
> dom of judges since the day of Solomon. The
> trial court is better able to arrive at a sound and
> safe conclusion than can a court of review which
> has only the cold printed or typed record before
> it. . . . even where evidentiary facts are ad-
> mitted different inferences and conclusions may
> be drawn therefrom, and conclusions and judg-
> ments may hang upon intangibles and impressions
> not cognizable to a court of review. The trial
> court . . . was in better position to weigh the
> evidence and the inferences therefrom and de-
> termine the best interest of the child, and having
> done so, it is not for us to substitute our judg-
> ment for the judgment of the trial court's unless
> it appears from uncontradicted and undisputed
> evidence and the only inferences therefrom that
> the trial court violated its discretion and reached
> an untenable position." *Gilchrist* v. *Gilchrist, supra.*

This child is fortunate in having the love of her
grandparents and she is fortunate in having a father
who loves her. She cannot live in both homes. The
trial court very properly granted the grandparents
reasonable visiting privileges. We must recognize the
well established rule of law that the welfare of the
child is paramount to the claims of either parent and
that its care and custody, as well as visiting privi-
leges, should be awarded with regard to the best inter-
est of the child. The trial judge is in a position to see

598

the parties, to observe their conduct and demeanor and his decision ought not be reversed unless an abuse of discretion has been shown. *Cornwell* v. *Cornwell* (1940), 108 Ind. App. 350, 29 N. E. 2d 317; *Lucas* v. *Lucas* (1949), 119 Ind. App. 360, 86 N. E. 2d 300; *Adams* v. *Purtlebaugh* (1951), 230 Ind. 269, 102 N. E. 2d 499; *McKay* v. *Carstens* (1952), 231 Ind. 252, 108 N. E. 2d 249; *Beach* v. *Leroy* (1950), 228 Ind. 122, 89 N. E. 2d 912; *Weber* v. *Redding* (1928), 200 Ind. 448, 163 N. E. 269; *Watkins* v. *Watkins* (1943), 221 Ind. 293, 47 N. E. 2d 606; *Renard* v. *Renard* (1955), 126 Ind. App. 245, 132 N. E. 2d 278.

From this record we cannot find any abuse of judicial discretion by the trial court. Therefore, the judgment is affirmed.

Kelley, C. J., Royse, P. J., Bowen, Cooper, Crumpacker, JJ., concur.

NOTE.—Reported in 149 N. E. 2d 304.