149 Ind. App. 404 (1971)
273 N.E.2d 102
NORA DuFOUR
v.
DOUGLAS DuFOUR.
No. 1170A197.
Court of Appeals of Indiana.
Filed September 16, 1971.
*405 John D. Shuman, of Elkhart, for appellant.
Richard H. Sproull, of Elkhart, for appellee.
ROBERTSON, J.
This appeal arises out of a decree of divorce and a subsequent modification of the divorce decree entered by the Elkhart Circuit Court. Plaintiff-appellant filed an action for divorce on June 11, 1969, against her husband, the appellee herein, and on December 5, 1969, the court entered a divorce decree. In the decree the court granted custody of the parties' two minor children to the defendant, and visitation rights were granted to the plaintiff. The portions of the decrees pertinent to the custody of the children, and to visitation rights, read as follows:

*406 "IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the defendant shall have the custody of the minor children of the parties, namely: Larry Dufour and Timothy Dufour.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the plaintiff shall have the right to see, visit and have the temporary custody of said minor children at all reasonable times."
Thereafter, on June 26, 1970, the plaintiff filed a Petition for Modification of Divorce Decree in Regard to Visitation Rights. After hearing evidence on this petition, the court entered the following order:
"And the Court being duly advised in the premises now finds that the decree heretofore entered herein with reference to the visitation of children be modified to the extent that henceforth the plaintiff shall have the temporary custody of Larry Dufour only with the consent of said Larry Dufour; that said decree as to visitation of children be modified to the further extent that henceforth the Plaintiff shall have the right to see and visit with Timothy Dufour at all reasonable times and shall have the right to see him and take him into her custody in the home of Plaintiff's sister, Mrs. Andrew Gingerich, in Elkhart County, Indiana, overnight or nights on various occasions, she to notify the defendant of such temporary custody situations at least ten days prior thereto."
Subsequent to entry of the above order the plaintiff filed a Motion to Correct Errors, which was overruled on September 4, 1970, and thereupon an appeal was taken to this court.
Before discussing the merits of appellant's appeal, it should first be pointed out that counsel for appellee failed to file an answer brief in this appeal, and therefore it is only incumbent upon appellant to make a prima facie showing of reversible error in order to entitle her to a reversal of the trial court's decision. Berry et al. v. The Town of Fowler (1960), 240 Ind. 443, 166 N.E.2d 333; Kuykendall v. Co. Comm. (1968), 142 Ind. App. 363, 234 N.E.2d 860; *407 Nunemaker v. Glassburn et ux. (1965), 137 Ind. App. 655, 210 N.E.2d 668.
The appellant's Motion to Correct Errors sets out four specifications of error. However, in view of the result we have reached, we find it necessary only to discuss No. 3:
"3. The decision is not supported by sufficient evidence upon all necessary elements of the claim and the defense, and is contrary to the evidence."
It appears from the record and from appellant's uncontradicted statement of facts that the only evidence supporting the trial court's decision was the testimony of the appellant and that of the appellant's present husband's ex-wife.
Considering first the relevant portions of the appellant's testimony, the following question and answer were admitted in evidence:
"Q. This gentleman you are married to, Mr. Pawling, were you going with him before you divorced Mr. Dufour?
"A. Pardon me?
"MR. MEHL: I believe we are going to object to going back in and trying the divorce suit. This is merely a matter of visitation rights.
"THE COURT: Objection overruled. (Thereupon the question was read by the Court Reporter).
"A. Yes, I went with him before we got our divorce."
In her brief, appellant contends that at a hearing upon the modification of a divorce decree, evidence of the conduct of the parties prior to the entry of the decree is not admissible in evidence, and that such evidence should be limited to the present living conditions and conduct of the parties concerning such visitation. We must agree with the appellant's argument. It is a well settled rule of law that the modification hearing cannot be used to retry the issues settled by the divorce decree. This rule was applied in Scott v. Kell (1956), 127 Ind. App. 472, 479, 134 N.E.2d 828, in the following language:

*408 "During the trial of the issues joined on the present petition the appellant, in an effort to prove that the appellee is not a fit person to have the custody of the two girls even temporarily, offered much evidence concerning her conduct before the divorce. The exclusion of this evidence is charged as error but we do not consider it so. In Dubois v. Johnson, supra, a case very similar to this, the court said:
`Of course, the welfare of the children is the prime consideration, and should be so regarded in the hearing of the case, and the making of the decree. But when the case has been heard, and a final decree entered, the doctrine of res adjudicata applies as in any other case. There must be an end to such litigation. If, in this case, appellee has the right to go into the conduct of the appellant prior to the decree awarding the custody of the child he may do so in any number of subsequent proceedings for a modification of that decree, and thus the court may be called upon to re-try the issues already settled.
`It is important to the child that there shall be an end to such litigation. No good can come to it from re-exposures of the faults of its parents. When the fitness of its custodian is once settled, that settlement should be regarded as final up to that time.'"
Accordingly, testimony regarding the appellant's conduct prior to the original divorce decree was inadmissible in the modification hearing, and does not, therefore, support the trial court's decision.
The testimony of the appellant's present husband's ex-wife (referred to hereafter as Doris Pawling) revealed that during her marriage to Mr. Pawling she had consented to engage in acts of oral sexual intercourse with her husband, who, according to the witness, could not be otherwise sexually satisfied. The appellant suggests that this testimony could have been excluded as irrelevant, however, the relevancy of Doris Pawling's testimony is not an issue here for the reason that the appellant failed to make such an objection at trial. This testimony, therefore, was properly admitted into evidence and we are thus confronted with the question of whether or not it constitutes sufficient evidence to sustain the trial court's decision to modify the divorce decree by restricting the appellant's *409 visitation and temporary custody rights to her sister's home.
While this appeal is concerned with the modification of visitation rights and not with a change in the permanent custody of the children, it has been held that the same rule is applicable to both types of cases. Renard v. Renard (1956), 126 Ind. App. 245, 132 N.E.2d 278. The rule to which we refer has been consistently followed by the courts of this state, and was followed in Adams v. Purtlebaugh (1951), 230 Ind. 269, 274, 102 N.E.2d 499, wherein it was stated:
"The cause relied upon in this petition to justify the modification of the decree must be that since the last order there has been a change in conditions of such a decisive character as to make it necessary for the welfare and happiness of the child that the requested change in care and custody be made. If such vital change in conditions is not averred and not shown by the evidence and found by the court, no change in care and custody can be made. Brown v. Beachler (1946), 224 Ind. 477, 68 N.E.2d 915; Scott v. Scott (1949), 227 Ind. 396, 86 N.E.2d 533; Reineke v. Northerner (1949), 119 Ind. App. 539, 546, 84 N.E.2d 900; White v. White (1938), 214 Ind. 405, 410, 15 N.E.2d 86."
This rule was recently reaffirmed by our Supreme Court in Huston v. Huston (1971), 256 Ind. 110, 267 N.E.2d 170, 171, in the following language:
"[1] In order to justify a change of custody of minor children of divorced parents, there must be a change in conditions from the date of the last court order and such change must be of such decisive character as to make change of custody necessary for the welfare of the children. Perdue v. Perdue (1970), Ind., 257 N.E.2d 827; Brickley v. Brickley (1965), 247 Ind. 201, 210 N.E.2d 850, 211 N.E.2d 183; Renard v. Renard (1956), 126 Ind. App. 245, 132 N.E.2d 278; Adams v. Purtlebaugh (1952), 230 Ind. 269, 102 N.E.2d 499."
In Huston, supra, p. 171, the court further stated:
"[2] Where modification is sought the burden is on the petitioner to allege and prove a substantial and material *410 change in conditions affecting the welfare of the children. Wible v. Wible (1964), 245 Ind. 235, 196 N.E.2d 571."
We are of the opinion that, as a matter of law, appellee did fail to prove in the trial court a substantial and material change in conditions affecting the welfare of the children in order to justify a change of visitation rights, therefore, the decision of the trial court was an abuse of discretion. While appellee was successful in proving that certain difficulties existed in the sexual relations of appellant's present husband's former marriage, there was no proof that such difficulties existed in the present marriage which could possibly affect the welfare of the children during periods of visitation. To the contrary, it was testified that sexual relations in the present marriage were perfectly normal. It should further be pointed out that appellee, himself, testified that the appellant had always been a good mother to the children.
For the foregoing reasons, we must find that the trial court's decision was not supported by sufficient evidence, and must, therefore, be reversed.
Sullivan, P.J., and Lowdermilk, J., concur; Buchanan, J., dissents with opinion.

DISSENTING OPINION
BUCHANAN, J.
I respectfully dissent from the majority opinion on the following grounds:
1. The standard to be applied by this court in reviewing the decision of the trial court is whether the trial court abused its judicial discretion in altering the visitation rights of the plaintiff.
2. There was more than sufficient evidence in the record and inferences therefrom (not considered by the majority opinion) to form a reasonable and substantial basis for the trial court's decision, i.e., there, was no abuse of discretion by the trial court in narrowing the visitation rights of the plaintiff.
*411 DISCUSSION OF GROUND ONE  It has long been the law in this and the Supreme Court that "[T]he disposition of children is not controlled by hard and fast rules of law but by the exercise of the sound judicial discretion of the court confronted with the problem. Review by an appellate court of such disposition is limited to the question of abuse of judicial discretion." (Emphasis supplied.) Gilchrist v. Gilchrist, (1947), 225 Ind. 367, 75 N.E.2d 417, at 372. To the same effect is Renard v. Renard (1956), 126 Ind. App. 245, 132 N.E.2d 278; Dailey v. Dailey (1958), 128 Ind. App. 588, 149 N.E.2d 304; and Gatchel v. Gatchel (1961), 132 Ind. App. 56, 175 N.E.2d 887.
The standard used by the majority opinion is vague and avoids the use of the words "abuse of judicial discretion." The majority opinion says: "We are of the opinion that, as a matter of law, appellee did fail to prove in the trial court a substantial and material change in conditions affecting the welfare of the children in order to justify a change of visitation rights." The court then went on to reverse the trial court's decision because it was "not supported by sufficient evidence." This phrase became a convenient fulcrum on which to weigh the evidence.
Not having applied the tried and true doctrine of abuse of judicial discretion, it could neither apply that standard nor define what constitutes judicial discretion. It appears to me that the application of this standard and the definition thereof are vital to any decision in this case.
The leading case as to what constitutes abuse of discretion, and the one most often cited, is McFarlan v. Fowler Bank City Trust Co. (1938), 214 Ind. 10, 12 N.E.2d 752, where the Indiana Supreme Court defines what constitutes an abuse of judicial discretion:
"An abuse of discretion is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. The exercise of a lower court's discretion is not reviewable; it *412 is only the alleged abuse of that power which is reviewable on appeal." (Emphasis supplied.)
This definition is followed and applied with approval in Adams v. Adams (1946), 117 Ind. App. 335, 69 N.E.2d 632, and in Dunbar v. Dunbar (1969), 145 Ind. App. 479, 251 N.E.2d 468.
Therefore, in reviewing the judicial discretion of the trial court, this court should examine and consider all of the evidence disclosed by the record which was before the trial court in making its decision, even if it requires a reluctant journey into the record on our part. Renard v. Renard, supra; Adams v. Adams, supra.
DISCUSSION OF GROUND TWO  An examination of the record clearly reveals that there was more than adequate evidence before the trial court to logically support its ruling.
The majority opinion is bottomed on its statement of the sole question for determination as being "whether or not it [certain evidence of oral sexual intercourse] constitutes sufficient evidence to sustain the trial court's decision to modify the divorce decree by restricting the appellant's visitation and temporary custody rights to her sister's home." Thus the majority only determined whether there was insufficient evidence by considering this sole piece of evidence. Nothing could be more in error.
In exercising its judgment, the trial court had before it from the pleadings, testimony, and other evidence in the case substantial logical reasons for its decision.
Two uncontraverted salient facts before the court were that shortly after the divorce between the plaintiff and the defendant in December of 1969, the plaintiff (having previously voluntarily given custody of the two children to the defendant) permanently left the state of Indiana to make her residence in Ohio; secondly, she ultimately married one Forrest Pawling and resided with him in the state of Ohio. Mr. Pawling's *413 inclination for oral sexual intercourse, his emotional instability and character were described by his former spouse; she also described a breakdown in his character and a visit by him to a psychiatrist; Larry Dufour, age fifteen, older son of the plaintiff and the defendant, testified his mother and Pawling lived in adultery after her divorce and prior to their subsequent marriage; further evidence indicated that a trip or trips to Ohio might interfere with the summer plans of the defendant for Timothy to go camping and participate in baseball games, plans already having been made. This evidence without more would, in my opinion, indicate sufficient change of conditions to justify modifying plaintiff's visitation rights, but there is more.
Plaintiff states in her Petition to Modify and so testified that she wished to take Timothy (the younger son, age ten) to her home in Ohio for a vacation period. Mr. Pawling would presumably be present in his own home, and his good character was questioned by two witnesses. From the record it would appear visitations in Ohio would be solely for the convenience and benefit of the plaintiff.
From the testimony of the four persons who testified (the plaintiff, the defendant, Mrs. Doris Pawling, and Larry Dufour), it appears there is a basis for believing that the plaintiff and Mr. Pawling were living in adultery at the time of her divorce and prior to the time of her remarriage; that Mr. Pawling gave up his Boy Scout work and that his whole personality changed, including the change in sex habits referred to in the majority opinion; that he was in a very emotional state when he visited the former Mrs. Pawling after the divorce between the plaintiff and the defendant; and that he displayed little interest in his own grandchildren.
The majority opinion indicates that the circumstance of the plaintiff going with Mr. Pawling should not be considered by the court because it involved conduct prior to the time of the divorce, and cites in support thereof Scott v. Kell (1956), 127 Ind. App. 472, 134 N.E.2d 828. This case is not applicable *414 because it refers to the conduct of one of the parties to the divorce and not the conduct of a person not a party to the divorce whose character is in question as one who might exercise improper influence over a child of tender years in his home. Therefore this latter circumstance was properly admitted and properly formed part of the basis for the trial court's decision.
The trial court properly had in mind that "the welfare of the child is the paramount consideration." Maxwell v. Maxwell (1956), 127 Ind. App. 266, 138 N.E.2d 921. This accounts for its concern with the character and conduct of Mr. Pawling.
Another proper basis for the court's decision was evidence that the plaintiff and her new husband, Mr. Pawling, occupied a small apartment in Ohio with no separate bedroom for Timothy, who would be obliged to sleep on a studio couch in the living room. Also, there was some evidence of disinterest on the part part of the plaintiff in visiting her children when the opportunity was available. Further, her older son had strong feelings about his mother living in adultery and was determined to have nothing further to do with her.
Other testimony indicated that the home of the plaintiff's sister was a suitable place for visitation by the plaintiff with Timothy, whether for short periods of time or on an overnight basis.
There is, then, an abundance of evidence, only part of which is in conflict, from which the trial court could narrow the visitation rights of plaintiff in the manner it deemed to be in the best interests of Timothy Dufour.
Over and over again, almost ad nauseam, appellate courts recite the rule that the trial judge is in a position to see the parties and to observe their conduct, manner and demeanor, and his decision ought not to be reversed unless an abuse of discretion has been shown. Otherwise it is conclusive. Cornwell v. Cornwell (1940), 108 Ind. App. 350, 29 N.E.2d 317; *415 Lucas v. Lucas (1949), 119 Ind. App. 360, 86 N.E.2d 300; Adams v. Purtlebaugh (1951), 230 Ind. 269, 102 N.E.2d 499; McKay v. Carstens (1952), 231 Ind. 252, 108 N.E.2d 249; Beach v. Leroy (1950), 228 Ind. 122, 89 N.E.2d 912; Weber v. Redding (1928), 200 Ind. 448, 163 N.E. 269; Watkins v. Watkins (1943), 221 Ind. 293, 47 N.E.2d 606; Renard v. Renard (1956), 126 Ind. App. 245, 132 N.E.2d 278.
This case suffers from the failure of the appellee to file a brief and possibly from the unusual character of some of the evidence, all of which tends to obscure the rational basis for the court's judgment. As near as can be determined from this record, the trial court does not appear to have committed an error of judgment, much less entered a judgment "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom."
In summarizing the evidence prior to making his decision, the trial judge said, in part:
"In view of the testimony here, as to the character of the present Mr. Pawling, I rather hesitate to require him [Timothy] to go to Ohio and spend any time in the Pawling home. I can see no reason why Timmy couldn't visit with her [Mrs. Pawling] overnight or several nights in her sister's home here in Elkhart County. I think arrangements should be made in some manner, so it wouldn't interfere too much with his [Mr. Dufour's] program of having these children out for camping trips and fishing and what have you. Could counsel get together and arrange for times on that?"
The majority quite properly utter the principle that it is only incumbent upon an appellant to make a prima facie showing of reversible error in order to be entitled to a reversal of the trial court's decision. This rule, however, becomes an exercise in futility for litigants unless its Draconian effect is softened by a policy of determining appeals on their merits wherever possible. This is particularly true where the question of abuse of judicial discretion by a trial court is at issue. *416 The particular circumstances of this case justify searching the record.
The effect of the majority opinion is to emasculate the traditional concept of what constitutes abuse of discretion and the principle that the welfare of the child is of paramount importance in determining custody and visitation rights.
The decision of the trial court should have been affirmed.
NOTE.  Reported in 273 N.E.2d 102.