JILL S. LOESER v. JULIUS LOESER.

[No. 1-1173A191.  Filed May 29, 1974.  Rehearing denied July 2, 1974. Transfer denied October 3, 1974.]

*Virginia Dill McCarty,* of Indianapolis, for appellant.

*David E. Rosenfeld, Rosenfeld, Wolfe & Frey,* of Terre Haute, for appellee.

LOWDERMILK, J.—Defendant-appellant, Jill S. Loeser, and plaintiff-appellee, Julius Loeser, will be hereinafter referred to as "Jill" and "Julius" and the minor child of the parties as "Jeffrey."

Jill and Julius were married August 28, 1965, and Jeffrey was born to this union on January 22, 1968. The marriage was not one of bliss and happiness and Jill and Julius had marital difficulties which resulted in Julius taking Jeffrey to Highland Park, Illinois, to Jill's parents on March 26, 1971. Jill has since that time resided with her parents at their Illinois residence and she kept custody of Jeffrey until ordered by an Illinois court to give Jeffrey to Julius, about the 22nd day of May, 1972.

On April 19, 1971, Julius filed suit for divorce in the Superior Court of Vigo County, and proof of service of summons and process on Jill was made by the clerk's return of service of summons by mail, together with return receipts. On June 4, 1971, Jill filed suit for separate maintenance and custody of Jeffrey in the Circuit Court of Lake County, Illinois. On June 10, 1971, Julius obtained a restraining order without notice from the Vigo Superior Court which prohibited Jill from further prosecution of her action in Illinois. A temporary injunction was issued on June 14, 1971.

Then, on June 21, 1971, the Vigo Court granted Julius a divorce after a hearing at which Jill defaulted. Jill did not appear in the divorce action, as she said, because of the way she had been treated in Terre Haute and because her attorneys advised her that the courts of Illinois had jurisdiction of the

action. She knew she was charged with the misconduct of adultery and did not want to face it at that time.

A Terre Haute attorney had been employed by attorney Arthur Morse of Chicago to consult with him in regard to the course of action Mr. Morse should take in respect to Jill. Neither said Terre Haute attorney nor Mr. Morse appeared of record on Jill's behalf; however, the Terre Haute attorney was in the court room as an observer and was called as a witness by Julius at the trial. He testified that attorney Morse had told him that he would not appear in the cause and no one should appear in Jill's behalf.

On June 28, 1971, Julius filed a petition for writ of habeas corpus in the Circuit Court of Lake County, Illinois, and on July 8th of that year in that cause the Lake Circuit Court dismissed Jill's separate maintenance suit and entered an order requiring Jill to deliver Jeffrey to Julius. That case was decided on the question of jurisdiction.

Jill took that case to the Illinois Supreme Court on the day the judgment was made against her and on July 14, 1971, the Illinois Supreme Court issued an order staying the writ of habeas corpus and ordered Jeffrey to be placed in the custody of Jill's parents, Leonard and Gladys Scheyer, and granted Julius visitation, one week each month in Chicago.

The Illinois Supreme Court, on May 22, 1972, affirmed the decision of the Lake Circuit Court and later set aside its stay order and Jill delivered Jeffrey to Julius. She was allowed to have Jeffrey visit for one week each month in Illinois.

Jill filed a petition for writ of certiorari in the United States Supreme Court and the same was denied on November 13, 1972. Thereafter, Jill was allowed by Julius to visit Jeffrey every other week end at Julius' residence in Terre Haute.

During this litigation and from March 26, 1971, until June of 1972, Jill had the physical custody of Jeffrey; after June, 1972, Julius had the physical custody and charge of Jeffrey.

Jill's appearance was entered by her Terre Haute attorney in Vigo County on December 11, 1972, and on December 22nd of that year she filed her petition to modify the decree, which was heard on April 18, 1973.

Appellant Jill's brief contains much of the evidence covering the facts of the divorce case. However, we shall consider that evidence as surplusage in the appeal before us inasmuch as Jill's motion to modify the decree as to custody is all that is before this court.

Jill's motion to correct errors was timely filed, consists of six specifications, together with a memorandum of reasons and is directed to the petition to modify the custody under the decree.

On August 3, 1972, the trial court overruled the motion to correct errors and Jill did, on August 20, 1973, file her praecipe for a full and complete transcript of the entire record of the cause, beginning with plaintiff's complaint for absolute divorce.

Jill has consolidated for argument specifications of her motion to correct errors 1, 2, 3, and 6, and we shall treat them as one under Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7), which specifications raise the following issue; did the trial court commit error by refusing to hear evidence at the hearing on the petition to modify relating to matters which occurred prior to the granting of the divorce decree? Jill argues that the trial court did not have before it sufficient evidence at the trial of the divorce to properly make a determination as to the custody of Jeffrey. Jill contends that since the divorce was *ex parte*, she has had no opportunity to present evidence relating to matters prior to the granting of the divorce decree.

However, it is our opinion that Jill cannot be now heard to complain that she had no opportunity to present evidence at the trial of the divorce case. The record discloses that Jill was properly served and had notice of the trial and, in fact, had her Indiana attorney present at the trial as an

observer. The Indiana attorney had specific instructions not to enter an appearance on Jill's behalf. Jill had the opportunity and right to be heard and present evidence at the trial and it was by her choice that she did not exercise such rights and cannot now be heard to complain.

In the case of *DuFour* v. *DuFour* (1971), 149 Ind. App. 404, 273 N.E.2d 102, 104, 105, this court held:

> ". . . It is a well settled rule of law that the modification hearing cannot be used to retry the issues settled by the divorce decree. . . .
>
> * * *
>
> Accordingly, testimony regarding the appellant's conduct prior to the original divorce decree was inadmissible in the modification hearing, and does not, therefore, support the trial court's decision."

This is further borne out by the case of *Huston* v. *Huston* (1971), 256 Ind. 110, 267 N.E.2d 170, wherein it was held that a change of custody must result from changes in conditions since the last court order which necessitates a change of custody, for the welfare of the children.

Thus, it is clear that the trial court properly excluded evidence of conduct of the parties prior to the last court order (the divorce decree.)

Appellant Jill's specifications of error 4 and 5 have been consolidated by her in her brief and argued together. These specifications, briefly, are that the court erred in not permitting Jill to present evidence to show a change of conditions as to Jeffrey's welfare while in her custody and the custody of her parents while in Lake County, Illinois, from and after the rendition of the divorce in Vigo County, Indiana, in June of 1971, to June of 1972, at which time the custody of Jeffrey was returned to Julius at Terre Haute.

Jill contends she was punished for pursuing her Illinois action by exclusion of her evidence during the year Jeffrey

was out of the jurisdiction of the court and after she had purged herself of any contempt of the Indiana court by delivering her son to Julius.

Julius first contends on this issue that Jill failed to make a proper offer to prove at trial. An examination of the record discloses that when Jill did attempt to introduce evidence relating to the one year period in question, the trial court sustained an objection to any such evidence and informed the parties that no such evidence would be heard. Counsel for Jill made it clear to the court what the evidence was intended to prove, although he did not make it in the words of an offer to prove in the usual and accepted form of offer to prove as established by usage and custom in Indiana.

Without deciding whether the offer to prove was sufficient to save the question in the trial court, and assuming arguendo that the offer to prove was sufficient, we must first decide whether this issue has been properly saved for appeal.

Julius also urges that Jill has failed to comply with Ind. Rules of Procedure, Trial Rule 59, Motion to Correct Errors, (B), which reads as follows, to-wit:

"(B) Form of motion. A motion to correct error shall state the issues upon which error is claimed, but the issues are not required to be stated under or in the language of the reasons allowed by these rules, by statute or by other law. The statement of claimed errors shall be specific rather than general, and shall be accompanied by a statement of the facts and grounds upon which the errors are based."

We are now confronted with the problem of whether Jill did or did not save her record on this issue in her motion to correct errors. A careful review of the motion to correct errors, together with the memorandum made a part thereof, discloses a complete failure to set out the question, the objection, the statement of counsel as to what the evidence would be if the witness was permitted to answer, and the court's ruling thereon.

The case of *Daben Realty Co., Inc.* v. *Stewart* (1972), 155 Ind. App. 39, 290 N.E.2d 809, 812, in speaking on this proposition, states:

> "Nowhere in the motion nor in appellant's brief is the question or the plaintiff's objection set out, either in substance or verbatim.
>
> Trial Rule 59(B), IC 1971, 34-5-1-1, requires that '[t]he statement of claimed errors [in the motion to correct errors] shall be specific rather than general. . . .' This rule, we believe, preserves the pre-existing case law requirement that:
>
> ' "In order to preserve for review the refusal of the court to permit a witness to answer a question on direct examination, *the motion for new trial must show the question, the objection, and the offer to prove what evidence would have been given by the witness in answer to the question.*" . . .'
>
> Appellant's failure to comply with the rule results in nothing being presented to us for review. . . ." (Our emphasis.) See, also, *State* v. *Hladik* (1973), 158 Ind. App. 223, 302 N.E.2d 544.

In the case of *Bennett* v. *State* (1973), 159 Ind. App. 59, 304 N.E.2d 827, this court, in passing on the requirement of saving a question for appeal by properly setting it out in the motion to correct errors, said:

> "While the motion to correct errors serves as the complaint on appeal, its primary purpose is to afford the trial court the opportunity to rectify errors it has committed. *Bud Gates, Inc.* v. *Jackson* (1970), 147 Ind. App. 123, 258 N.E.2d 691.
>
> Without being informed by a specific statement of the facts and grounds on which the claimed error is based, the trial judge cannot rectify his errors, if any. Were it otherwise, an appellant could propel himself into this or the Supreme Court by general statements of claimed errors, detailed at leisure after his motion to correct errors is overruled. . . ."

This question is jurisdictional and although the question, objection, court's ruling, and an informal offer to prove have been set out in the brief the same is inadequate to preserve the question on appeal as a waiver has already taken place

by the failure to follow the requirements of TR. 59 (B) in the motion to correct errors.

The third issue is a compilation of specifications of error numbered 1, 2, 3, 4, 5, and 6, and is whether the trial court in its ruling abused its discretion and the ruling was contrary to law in that it failed to change custody of the minor child to Jill.

Our Supreme Court held, in the case of *Gilchrist* v. *Gilchrist* (1947), 225 Ind. 367, 372, 75 N.E.2d 417, as follows:

"... The rights of parents, however, are not absolute. They must yield to the welfare of the child. Its welfare and best interest are the paramount and controlling considerations in all disputes over the custody of the child. [Cases cited omitted.] The disposition of children is not controlled by hard and fast rules of law but by the exercise of the sound judicial discretion of the court confronted with the problem. Review by an appellate court of such disposition is limited to the question of abuse of judicial discretion. [Cases cited omitted.]"

The evidence as to Jeffrey's conduct, behavior and well being and as to his best interests is conflicting. It is elementary that this court does not weigh the evidence. There is adequate evidence upon which the trial court could find as it did.

The case of *Brickley* v. *Brickley* (1965), 247 Ind. 201, 204, 210 N.E.2d 850, relates as follows:

"While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

On appeal it is not enough that the evidence might support some other conclusion, but it must positively require

the conclusion contended for by appellant before there is a basis for reversal. . . ."

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 311 N.E.2d 636.