**In re the Marriage of K. B., Petitioner-Appellant,**

v.

**S. B., Respondent-Appellee.**

**No. 1–1279A369.**

Court of Appeals of Indiana, First District.

Jan. 29, 1981.

James E. Davis, Davis & Davis, Greenfield, for petitioner-appellant.

Michael J. Tosick, James L. Brand, Free, Brand, Tosick, VanWinkle & Allen, Greenfield, for respondent-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

K.B. (wife) appeals the order of the Hancock Superior Court granting S.B. (husband) visitation rights with their daughter, M.L.B. We affirm.

## STATEMENT OF THE FACTS

K.B. and S.B. were married on June 6, 1964; they adopted M.L.B. on May 30, 1973, when she was three days old. K.B. and S.B. separated, and K.B. filed a petition for dissolution of marriage on February 2, 1978. A hearing was held on this petition before Judge Payne in the Hancock Superior Court, and K.B.'s petition for dissolution was granted. During the hearing, conflicting evidence was admitted to the effect that S.B. had not shown much interest in M.L.B. until September 1977; that S.B. had sexually fondled M.L.B.; and that on occasion S.B. had shaken M.L.B. or had begun to slap her. Custody of M.L.B. was granted to K.B., and S.B. was denied visitation rights.[1] He filed a petition to modify the dissolution decree on January 30, 1979, so that he could have visitation rights. On the same date, S.B. filed a motion for change of judge. This motion was granted, and Special Judge Schrenker presided at the hearing on the petition to modify. The evidence revealed that S.B. had remarried and moved to Carmel where he lives with his wife and eleven (11) year old stepson in a two bedroom townhouse; that S.B. was less depressed; that he had not seen M.L.B. since February, 1978; that M.L.B. continued to live with her mother; that M.L.B. was happy and doing well in school. Pursuant to K.B.'s request for special findings of fact and conclusions of law, the court granted the modification on December 10, 1979, and found as follows:

"1. The Court finds that a dissolution of marriage was granted in the case by this Court on July 10, 1978, and the custody of said minor child, [M.L.B.], age 5, was granted to the petitioner, and the Court denied visiting privileges with said minor child, to the respondent.

1. The decree of dissolution stated: "The Court further finds, adjudges, and decrees that the care and custody of [M.L.B.], the minor child of the parties, is hereby granted to the petitioner and that visitation with such child by the respondent might endanger the physical health of such child, or significantly impair her emotional development and the Court, therefore, Orders that the respondent shall not be entitled to visitation until further Order of the Court."

"2. The Court further finds that the respondent herein, on the 30th day of January, 1979, filed his verified petition to modify the decree in this cause alleging a substantial and continuing change in circumstance in the relationship of the parties since the original decree was made in this cause, and prays the right to visit said child at all reasonable times, and further, that it would be to the best interest of said minor child that she visit with the respondent.

"3. The Court further finds that said child is alert, well adjusted [sic] and emotionally stable.

"4. The Court further finds that the respondent is married, emotionally stable, and maintains a suitable home and surroundings for visitation with said child.

"5. The Court further finds that the evidence submitted in this cause, discloses a substantial change of circumstances in the relationship of the parties hereto since the original decree, and that the order heretobefore [sic] entered denying respondent visiting privileges should be modified.

"6. The Court further finds from the record submitted, and evidence presented, that visitation by the respondent will not endanger the childs [sic] physical health or significantly impair her emotional development, but that it is in the best interest of said child, that the respondent be granted visiting rights with said child.

"The Court further determines that the law is with the respondent, and that as a matter of law the order denying visiting privileges made in this cause should be modified as hereinafter set out . . . ."

K.B. received a temporary stay of the trial court's order by this court on December 21, 1979. On January 4, 1980, the temporary stay was continued until the determination of K.B.'s appeal or further order of this court.

## ISSUES

K.B. raises the following issues for our consideration:

1. Did the trial court's judgment contain findings of fact on all the ultimate facts necessary to support the judgment?

2. Did the trial court err in allowing testimony on issues which were previously litigated and which did not tend to show a change in circumstances?

3. Does the evidence support the trial court's findings and judgment?

4. Did the trial court err when it granted S.B.'s motion for change of judge?

## DECISION

*Issue One*

K.B. alleges that the trial court failed to find all ultimate facts which are necessary for the modification of the dissolution decree. She contends that the standard to be applied by the trial court in determining whether a modification is necessary is whether there has been a change of conditions of such a decisive nature as to make it necessary for the welfare and happiness of the child that modification be granted; therefore, she states, a specific finding of fact that there has been such a change in conditions is necessary. On the other hand, S.B. contends the standard to be applied by the trial court in considering visitation rights is the best interests of the child as set out in Ind.Code 31–1–11.5–24(b).[2]

Whether a change of conditions must be shown in order to obtain a modification of visitation rights has not been decided by this court since the Dissolution of Marriage Act of 1973.[3] However, it has been well settled that prior to the new act a change of conditions was necessary for a modification of visitation rights, *DuFour v. DuFour*, (1971) 149 Ind.App. 404, 273 N.E.2d 102;

**2.** IC 31–1–11.5–24(b) states: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation might endanger the child's physical health or significantly impair his emotional development."

**3.** IC 31–1–11.5–1 *et seq.*

*Renard v. Renard,* (1956) 126 Ind.App. 245, 132 N.E.2d 278, as it was necessary for a modification of custody. *Huston v. Huston,* (1971) 256 Ind. 110, 267 N.E.2d 170. S.B. contends that the best interests of the child is the sole standard for a modification of visitation rights and cites as support therefore IC 31–1–11.5–24(b) and *Chance v. Chance,* (1980) Ind.App., 400 N.E.2d 1207. *Chance* involved the modification of the visitation provision of a dissolution agreement. The appellant argued on appeal that the appellee's Petition for Instructions was improper because it did not allege any change of circumstances which affected the best interests of the children. In addressing this issue, Judge Shields stated:

> "The Dissolution of Marriage Act does not specifically require a change of conditions before a trial court can modify custody, let alone specify and detail visitation. *Franklin v. Franklin,* (1976) 169 Ind.App. 537, 349 N.E.2d 210. Were we to assume the trial court modified a visitation order, rather than specifying and detailing visitation, the directive of the applicable statute is that the modification serve the best interests of the child. IC 31–1–11.5–24 (Burns Supp.1979)." (Footnotes omitted.)

*Id.* at 1210–11.

█ We agree with Judge Shields that the statute does not specifically require that a change of conditions be shown to specify and detail visitation. Neither does it specifically require a change of conditions to modify visitation rights;[4] but rather, the statute specifically requires the modification serve the best interests of the child. However, without a requirement of some change of conditions for modification, the prior decree delineating the non-custodial parent's visitation rights would have no finality. As our Supreme Court stated in *Wible v. Wible,* (1964) 245 Ind. 235, 241, 196 N.E.2d 571, 574:

> "[T]he dissatisfied party could continually harass the other party and the courts

with petitions to modify, securing a change of judge and have that particular person as judge again review the facts and the evidence, hoping that such new judge would have a different viewpoint and thus change the custody. That would not put an end to the controversy, for then the other party could immediately file a petition to modify without alleging or showing any change in condition, and get another judge to review substantially the same facts, hoping again that this new judge would have a different viewpoint."

Although *Wible* deals with a petition to modify permanent custody, we believe the rationale used in *Wible* to be equally applicable to petitions to modify visitation rights. Without the requirement of a change of conditions, the issue of visitation rights could be relitigated endlessly to the detriment of a continuous relationship between the non-custodial parent and the child. This requirement of a change of conditions for modification of visitation rights does not in any way derogate the statutory standard found in IC 31–1–11.5–24(b). Rather, the change of conditions must be such that it is in the best interests of the child that a modification of visitation rights be granted since it is clearly the best interests of the child which are controlling. IC 31–1–11.5–24(b).

We now turn to the issue raised by K.B. that the special findings of the trial court did not include a finding that a change of conditions has occurred which makes it in M.L.B.'s best interests to modify S.B.'s visitation privileges. Specifically, K.B. contends the trial court's finding number five is a finding of evidentiary fact and not an ultimate fact. Alternatively, she states that if finding number five is an ultimate fact, it misapplies the law because it does not focus on the effect of the change on the welfare of the child. K.B. also contends that the trial court's finding number six is insufficient because it is not based on change of conditions.

---

**4.** IC 31–1–11.5–22(d) (Burns 1980) does require a change of circumstances so substantial and continuing as to make the existing custody order unreasonable in order to modify a custody order.

██ Whether findings of fact are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment. *In re Marriage of Miles*, (1977) 173 Ind.App. 5, 362 N.E.2d 171, *trans. den.* Their purpose is to provide the parties and the reviewing courts with the theory on which the judge decided the case so that the right of review for error may be preserved. *Id.* When considering the adequacy of special findings of fact, we will consider them as a whole, *Scott v. Kell*, (1956) 127 Ind. App. 472, 134 N.E.2d 828, *reh. den.* 137 N.E.2d 449, *trans. den.* 141 N.E.2d 106 (1957), and will liberally construe them in favor of the judgment. *Miles, supra.*

██ K.B.'s contention that the findings of fact do not contain all ultimate facts necessary to sustain the judgment is without merit. She has invited us to examine each finding individually. This we will not do. An examination of the trial court's findings of fact as a whole demonstrates that they do indeed reflect a change of conditions which makes it in the best interests of M.L.B. that modification be granted.

*Issue Two*

K.B. contends the trial court erred in allowing into evidence testimony of S.B.'s conduct prior to the dissolution hearing. Specifically, she alleges the testimony of Dr. Richard Hull, a psychiatrist, regarding his examination of S.B. after the dissolution decree should not have been allowed into evidence because a report by Dr. Hull was attached to S.B.'s motion for a new trial after the dissolution hearing. K.B. bases her argument upon the case of *DuFour, supra*, which held that testimony of the conduct of the parties which occurred prior to the original divorce decree is inadmissible in the modification hearing.

██ We agree with K.B. that testimony of S.B.'s conduct prior to the original divorce decree is inadmissible. This principle is a necessary corollary to the requirement of change of conditions for the modification of visitation rights because it prevents the relitigation of issues decided at the original dissolution hearing. *See, Loeser v. Loeser*, (1974) 160 Ind.App. 236, 311 N.E.2d 636, *trans. den., cert. den.* 419 U.S. 1122, 93 S.Ct. 436, 34 L.Ed.2d 299 (1975); *Scott, supra.* We do not, however, agree that Dr. Hull's testimony should have been excluded because his report had been attached to S.B.'s motion for new trial. This court specifically stated in *DuFour, supra*, that the conduct of the parties prior to the original divorce decree was inadmissible in the modification hearing. Dr. Hull's examination of S.B. occurred after the dissolution decree and, furthermore, his testimony of S.B.'s psychological condition pertained to S.B.'s condition after the dissolution decree. Because of the time of Dr. Hull's examination and the content of his testimony, the rule in *DuFour* is not applicable.

K.B. also contends Dr. Hull's testimony that he found nothing in his examination of S.B. to substantiate the charges of sexual fondling should not have been admitted because it opened up matters previously litigated. Similarly, she alleges that S.B.'s testimony about his conduct with M.L.B. during his marriage and the fact that he had lived with M.L.B. before the divorce was erroneously admitted by the trial court. All of this evidence, she states, was submitted to impeach the dissolution decree.

██ Error in the admission of evidence is not reversible when it is not prejudicial to the rights of the complaining party. *Marsh v. Lesh*, (1975) 164 Ind.App. 67, 326 N.E.2d 626. No prejudice can result from the admission of improper evidence where the same or similar evidence has been admitted without objection. *Massachusetts Bonding and Insurance Co. v. Free*, (1919) 71 Ind. App. 275, 124 N.E. 716. Even if the admission of the testimony of S.B. and Dr. Hull was erroneous, we find no prejudice to K.B. She requested the court to take judicial notice of the record of the dissolution hearing; such action, in essence, placed before the court all the evidence of the parties' conduct before the dissolution decree and was equally an invitation to the court to reopen issues previously litigated. Further-

more, in actions tried to the court, it is presumed that the judge disregarded inadmissible testimony. *Ottman v. State*, (1979) Ind., 397 N.E.2d 273.[5]

*Issue Three*

K.B. challenges the sufficiency of the evidence in this case to support the findings of fact and judgment of the trial court. She states that the only evidence at the modification hearing was that the parties continued to live apart; S.B. had not visited M.L.B.; and S.B. had a continued support obligation. The evidence that S.B. had remarried and now lives in a home in Carmel, K.B. contends, is not a significant change.

S.B. contends that the record contains sufficient evidence to support the findings and judgment of the trial court. Specifically, S.B. recites the testimony of Dr. Hull that visitation would not be harmful to M.L.B. and that even if sexual misconduct had occurred in the past, it would not recur.

 If there is evidence of probative value to support the trial court's findings, they will not be disturbed on appeal. *Glasgo v. Glasgo*, (1980) Ind.App., 410 N.E.2d 1325 (*trans. pending*). In reviewing a trial court's determination of child custody or visitation rights, we will only reverse upon a showing of manifest abuse of the trial court's discretion. *In re Marriage of Julien*, (1979) Ind.App., 397 N.E.2d 651; *DuFour, supra; Renard, supra*. Such an abuse of discretion will not be found unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Marshall v. Reeves*, (1974) 262 Ind. 107, 311 N.E.2d 807. Our function on appeal is "to examine the decision of the trial court and determine whether the record discloses evidence or reasonable inferences to be drawn therefrom which serve as a rational basis to support the finding of the trial court." *Franklin v. Franklin*, (1976) 169 Ind.App. 537, 541, 349 N.E.2d 210, 213. We will not reweigh the evidence or judge the credibility of the witnesses. *Clark v. Clark*, (1980) Ind.App., 404 N.E.2d 23.

An examination of the record reveals that there is sufficient evidence to support the trial court's findings of fact, and that the court did not abuse its discretion in modifying the dissolution decree. The evidence reflects that S.B. is less depressed and happier since the dissolution decree. He has also remarried and lives in a two bedroom townhouse rather than a one bedroom apartment. Furthermore, Dr. Lawler, a psychologist, testified that contact with both parents is beneficial to a child when it can be worked out.[6]

K.B. contends that these changes are not significant. The import of her contention is that they do not disclose what S.B.'s future conduct with M.L.B. will be. We realize that K.B.'s principal concern about S.B.'s conduct with M.L.B. is the sexual fondling. The evidence of whether it will recur, just as the evidence of whether it did happen, is conflicting. Dr. Richard Lawler testified that recidivism is high in such cases; however, Dr. Ronald Hull testified that if S.B. had sexually fondled M.L.B., such tendencies would either be controlled or ended as a result of the attention that such behavior received during the divorce proceedings. We will not reverse the trial court's decision on the basis of conflicting evidence. *Franks v. Franks*, (1975) 163 Ind.App. 346, 323 N.E.2d 678. Neither will we substitute our judgment for that of the trial court.

---

5. Indeed, the record reflects that Judge Schrenker stated he was not going to retry issues previously decided.

6. Our Supreme Court also recognized the importance of contact with the child by both parents in *State ex rel. Summa v. Starke Circuit Court*, (1958) 238 Ind. 204, 207, 149 N.E.2d 541, 543 where Judge Achor stated: "Admittedly, in all such cases the welfare of the child must receive first consideration by the court, and this is true even though its parents are unreasonable, recalcitrant or even contemptuous of the court in regard to their behavior toward each other. However, the welfare of a child not only requires that it be supported; a child also needs the affection and companionship of both its parents insofar as their unnatural position makes it possible."

As Judge Young of our Supreme Court stated in *Gilchrist v. Gilchrist*, (1947) 225 Ind. 367, 372, 75 N.E.2d 417, 419:

"The disposition of children presents a delicate and perplexing task which has taxed the wisdom of judges since the day of Solomon. The trial court is better able to arrive at a sound and safe conclusion than can a court of review which has only the cold printed or typed record before it.... even where evidentiary facts are admitted different inferences and conclusions may be drawn therefrom, and conclusions and judgments may hang upon intangibles and impressions not cognizable to a court of review."

We can not say as a matter of law that the trial court abused its discretion when the record reflects that S.B. has a suitable home for visitation with M.L.B.; that visitation by a non-custodial parent is beneficial to a child; and that any misconduct with M.L.B. on the part of S.B. in the past is not likely to recur.

*Issue Four*

S.B., upon filing his Petition to Modify, moved for a change of judge. The granting of this motion, K.B. contends, was error. She states that since S.B.'s motion for change of judge was not based upon bias or prejudice, the time limits of Ind.Rules of Procedure, Trial Rule 76(2) or (3) must be met.[7] These limits, she alleges, are calculated in reference to the period of the filing of the petition for dissolution since a modification hearing is not a new civil action, but is a continuation of the dissolution action. In essence, she is contending that an individual does not have a right to a change of judge when a petition to modify is filed. She bases this contention upon the fact that the trial court has continuing jurisdiction over matters of child custody and visitation.

Trial Rule 76 does provide the method and time of exercising the right to a change of venue from the county or the judge; however, the right to a change of venue from the county or judge is a substantive right which can be conferred only by the legislature. *State ex rel. Blood v. Gibson Circuit Court*, (1959) 239 Ind. 394, 157 N.E.2d 475. This substantive right was first conferred in the Code of Civil Procedure as enacted in 1881, Acts 1881 (Spec. Sess.), ch. 38, § 255, p. 240,[8] permitting a change of venue in any civil action upon a showing of one or more enumerated causes. However, in 1913 a broader statute pertaining only to a change of judge was enacted.[9] This statute provided for a change of judge in any matter of a civil, statutory, or equitable nature not triable by a jury upon the filing of an affidavit showing cause. IC 34-2-12-1. Because this statute is broader than IC 34-1-13-1, the fact that there can be no change of venue from the county in a

---

7. TR 76 provides:

"(1) In all cases where the venue of a civil action may now be changed from the judge or the county, such change shall be granted upon the filing of an unverified application or motion without specifically stating the ground therefor by a party or his attorney. Provided, however, a party shall be entitled to only one [1] change from the county and only one [1] change from the judge.

"(2) In any action except criminal no change of judge or change of venue from the county shall be granted except within the time herein provided. Any such application for a change of judge or change of venue shall be filed not later than ten [10] days after the issues are first closed on the merits.

"(3) Provided, however, in those cases where no pleading or answer may be required to be filed by the defending party to close issues (or no responsive pleading is required under a statute), each party shall have thirty [30] days after the filing of such case within which to request a change from the judge or the county.

"(8) Provided, however, if the moving party first obtains knowledge of the cause for change of venue from the county or judge after the time above limited, he may file said application, which must be verified personally by the party himself, specifically alleging when the cause was first discovered, how discovered, the facts showing the grounds for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days, and the ruling of the court may be reviewed only for abuse of discretion."

8. IC 34-1-13-1.

9. IC 34-2-12-1 (Acts 1913, ch. 122, p. 314).

particular action does not mean that there can be no change of judge. *State ex rel. Beckham, Sr. v. Vanderburgh Circuit Court,* (1954) 233 Ind. 368, 119 N.E.2d 713.[10]

To determine whether S.B. had a right to a change of judge, we must look to the pertinent statutory section which confers the right. IC 34–2–12–1, which provides for a change of judge in non-jury cases, states:

> "When any matter of a civil, statutory, or equitable nature not triable by a jury, is pending, the judge before whom said cause is pending shall change the venue thereof upon the application of either party to such cause, made upon affidavit, of either party or his attorney, showing any one or more of the reasons named in the statutes of this state authorizing changes of venue from the judge in civil actions. . . ."

The language of IC 34–2–12–1 is quite broad. It does not require the matter to be a new civil action as K.B. contends. Instead, it confers the right to a change of judge in *any matter* of a civil, statutory, or equitable nature. Matters of a statutory nature within the meaning of IC 34–2–12–1 have been held to include an action for divorce, *McDaniels v. McDaniels,* (1945) 116 Ind.App. 322, 62 N.E.2d 876, *trans. den.,* and a proceeding to modify support payments. *Rhinehalt v. Rhinehalt,* (1920) 73 Ind.App. 211, 127 N.E. 10. We hold that such matters also include a proceeding to modify visitation rights, for such a proceeding is statutory in nature and is not triable by a jury. K.B.'s contention that the continuing jurisdiction of the trial court in custody and visitation cases prevents any change of judge is without merit. As Judge Enloe stated in *Rhinehalt, supra,* 73 Ind.App. at 214, 127 N.E. at 11: "The jurisdiction over the said child still remains in the same

court. It simply authorizes a change as to the judge who shall hear and determine the matters in controversy."

The trial court did not err in granting S.B.'s timely motion for change of judge.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.

---

**10.** In *Beckham,* our Supreme Court issued a writ of mandamus to compel the circuit court to grant a change of judge in an action to set aside a default judgment. Such a writ would not have been issued if the relator had been asking for a change of venue from the county, for it has been consistently recognized in Indiana that a proceeding to set aside a default judgment is a summary proceeding which must be filed in the court in which the action is pending. Such a proceeding is not an original action in which change of venue from the county may be had. *State ex rel. Krodel v. Gilkinson, Judge,* (1935) 209 Ind. 213, 198 N.E. 323; *Christ v. Jovanoff,* (1926) 84 Ind.App. 676, 151 N.E. 26.