GATCHEL *v.* GATCHEL.

[No. 19,353. Filed June 8, 1961.]

Chester V. Lorch, Basil H. Lorch, Jr. and Lorch &
Lorch, of New Albany, for appellant.

Warren W. Martin, Jr., of Jeffersonville, and Hughes
& Antcliff, of Greenwood, for appellee.

BIERLY, J.—This proceeding was instituted by ap-
pellee, Joan D. Gatchel, in the Floyd Circuit Court to
modify a decree and judgment entered October 14,
1957, wherein appellant was awarded the sole custody
of the minor child of the parties without visitation
rights to the appellee.

58

To the first petition, filed by appellee, to modify said judgment, appellant filed a demurrer thereto, which the court sustained. Thereafter, appellee filed a second petition to modify. Again, appellant filed a demurrer thereto, assigning as a reason therefor, "That the petition does not state facts sufficient to constitute a a cause of action." The court overruled said demurrer, and, on April 8, 1959, found that appellee is *"a fit and proper person to be entrusted with the partial care, custody and control* of the following child, Clair S. Gatchel; and that the defendant (appellee) is entitled to the *custody* between the hours of 12:00 noon and 7:00 p.m. each and every Saturday." (Our emphasis.) The court rendered appropriate judgment on its finding.

Appellant timely filed his motion for a new trial, and, as grounds therefor, asserted that the decision of the court is not sustained by sufficient evidence, and is contrary to law. The court overruled appellant's motion for a new trial and this appeal followed. In his assignment of errors, appellant alleges error by the court in overruling his motion for a new trial, and in overruling his demurrer to appellee's petition to modify.

The record discloses that appellant and appellee in this cause of action had engaged in extensive litigation for divorce and the custody of the minor child of the parties, for some time prior to the entry of the order herein appealed from. Litigation had been carried on in the States of Indiana, Colorado, and Kentucky.

In the divorce action on or about October 1, 1957, appellant and appellee entered into an agreement wherein custody of the minor child was placed with appellee with visitational rights accorded appellant, and an obligation by him for child support. This agreement was entered of record. Thereafter, without notice to the court and to the appellant, appellee took her child

to Colorado, whereupon, appellant obtained an order from the Floyd Circuit Court on October 14, 1957, granting him the sole custody of the minor child, but said order was silent as to any right of visitation by the appellee.

Fortified with the court order of October 14, 1957, appellant proceeded to Colorado, and by writ of habeas corpus, obtained the custody of the minor child and brought it back to Kentucky. Appellee brought an unsuccessful action in Kentucky for the purpose of establishing appellant's residence in that state. Subsequently to October 14, 1957 and prior to December 23, 1957, at a hearing before the Floyd Circuit Court, the appellee shot and mortally wounded appellant's mother at her apartment in Louisville, Kentucky. Following a charge of manslaughter growing out of said act, appellee, upon a plea of temporary insanity, was acquitted.

While the court order of October 14, 1957, was silent as to any permission granting appellee rights to visit her minor child, the attorneys for the parties in February, 1958, secured an agreement between the parties to the effect that appellee be permitted to visit the child monthly in the office of appellant's attorney in Louisville. This arrangement continued until August, 1958, at which time appellee filed further pleadings in the Floyd Circuit Court seeking partial custody of her child. Immediately thereafter, appellant refused appellee further visitation privileges with the child. The next time appellee was permitted to visit her child was on December 26, 1958, upon order by letter of the Judge of the Floyd Circuit Court.

Appellee, in her second petition to modify the court order of October 14, 1957, charged appellant with failure to comply with and to continue in August, 1958, the agreement entered into the previous February be-

tween the parties, as consummated by and through their attorneys, whereby appellee was granted visitation rights monthly with her child; that at the time of the filing of this petition on February 20, 1959, appellee had seen her child only once since August, 1958, and that that visit with her child was on December 26, 1958, through the intervention of the Judge of the Floyd Circuit Court; that she seeks visitation rights with her child; that she "is a fit and proper person to have partial care and custody of said child;" and that the "welfare of said child can best be served by granting partial custody of the child" to the appellee.

According to the evidence, the appellee resides in Louisville, Kentucky, in a dwelling consisting of four rooms, a bedroom and a bath. She is employed as a secretary to the President of the Fulton Fish Market in that city. Appellant resides in Oak Park, Jeffersonville, Indiana, but is employed by W. D. Gatchel and Sons in Louisville, Kentucky. Appellant sends the minor child to the Mary Anita Nursery School in Louisville.

Appellant contends that in order to justify a modification by the court, of a former decree as to custody of a minor child, it is incumbent upon the petitioner to allege and to prove, *"a change in circumstances and conditions of such a decisive character,"* that it is imperative for the court in considering the welfare and happiness of the child, to accede to the request for a change in the custody and care of the child.

The appellant further tenaciously insists that no such change of conditions, is alleged in appellee's petition, nor, he alleges, does the testimony so establish. Appellant further postulates that the court's decree and judgment of October 14, 1957, is final "upon the *facts* that existed at the *time of the rendition of said judgment*

and any modification of said judgment as to the care or custody of the minor child, must be based upon the *conduct* or *changed circumstances of the parties,* subsequent to the prior order of said Court," and that it is imperative that appellee must allege in her petition and establish by proof "a change in circumstances which would justify the court in modifying the previous order." (Our emphasis), citing *Brown* v. *Beachler* (1946), 224 Ind. 477, 68 N. E. 2d 915; *Scott* v. *Scott* (1949), 227 Ind. 396, 86 N. E. 2d 533; *Adams* v. *Purtlebaugh* (1951), 230 Ind. 269, 102 N. E. 2d 499; *Reineke* v. *Northerner* (1949), 119 Ind. App. 539, 84 N. E. 2d 900.

Moreover, appellant urges a reversal on the assumption that the trial court, on October 14, 1957, adjudged appellant a fit and proper person to have the care and custody of the minor child of the parties; that appellee in her evidence, on the basis of her petition, did not present any reasons to the contrary, hence, the status quo could not be set aside, citing *Hussey* v. *Whiting* (1896), 145 Ind. 580-582, 44 N. E. 639; *Luellen* v. *Younger* (1924), 194 Ind. 411, 417, 133 N. E. 495, 143 N. E. 163; *Duckworth* v. *Duckworth* (1932), 203 Ind. 276, 280, 285, 179 N. E. 773; that the petition for a modification of an order of custody, as in the case at bar, always depends on matters arising subsequent to the former decree, citing *Renard* v. *Renard* (1956), 126 Ind. App. 245, 132 N. E. 2d 278; *Maxwell* v. *Maxwell* (1956), 127 Ind. App. 266, 138 N. E. 2d 921; and that appellant further contends that the Indiana rule of law, as in cases heretofore cited, is to the effect, *"that there must be a change in conditions so vital as to make it necessary for the welfare of the child that there be a change in custody."* (Appellant's Brief, page 36). (Our emphasis.) ". . . and this

must be shown by the evidence . . . ," citing *Biedron* v. *Biedron* (1958), 128 Ind. App. 299, 148 N. E. 2d 209; *Renard* v. *Renard, supra; McKay* v. *Carstens* (1952), 231 Ind. 252, 108 N. E. 2d 249.

Appellant asserts that petitioner-appellee failed to meet the legal requirements set forth in the cases heretofore cited, and that her evidence presented did not show a change in circumstances "concerning the child" since the original order, but it only related to change of circumstances of the appellee as to residence, her employment, and that appellee *"felt that the child needed her."* (Appellant's Brief, page 35.) (Our emphasis.)

Appellant strongly urges a violation by the trial court of its discretion by modifying the 1957 order pertaining to the custody of the minor child since the evidence presented by appellant on direct and cross-examination, disclosed that the child is in excellent physical health; that she is living with her father who employs a full time housekeeper, and; that she attends church services regularly, accompanied by her father; that the child is well adjusted and attends a nursery school in Louisville, Kentucky, and; "that the child had nightmares after the appellee obtained her custody, but said nightmares have not occurred for more than one year."

We restate the salient features of appellee's petition to the effect that she desires visitation rights; that she is a fit and proper person to have partial care and custody of the child, and; that a granting of partial custody to her is conducive to the health of her child. With this perspective of appellee's allegations, we shall proceed with the consideration of appellant's contentions and of his leading cases cited.

In the case of *Adams* v. *Purtlebaugh, supra,* the appellee, and mother of the minor child, obtained the custody of the child from appellant's mother, who obtained temporary custody of said child by agreement of the parties, on June 13, 1945, and obtained permanent custody on October 1, 1945, thence retaining custody until July 11, 1950. Appellee, in her petition, had charged appellant, her former husband, and his mother, the legal guardian of the child, with contempt of court of the court's order and asked custody and care of the child. The Supreme Court, in this case, held that there had not been a change of conditions "of such decisive character as to make it necessary for the welfare and happiness of the child, that the requested change in care and custody be made." We must note in this *Adams* v. *Purtlebaugh, supra,* case, the grandmother had had custody of the child for five of its formative years. The Supreme Court, in this case, further made the following observation as stated on page 276:

> "This court has always recognized and applied the principle that the welfare and happiness of the child may defeat the claims of a parent when the parent has voluntarily relinquished to others the care and custody of the child until the affections of the child and its foster parent have become so interwoven that to sever them would seriously mar and endanger the future welfare and happiness of the child." See cited cases.

In the case at bar, the evidence discloses no voluntary relinquishment of her child by appellee, but on the other hand, appellee had made earnest efforts to secure at least partial care and custody of it. At page 275, in the Adams case, the Supreme Court further said:

> ". . . It has been a fixed policy of the courts to arrange for custody of children of divorced parents

on a basis of permanence to the extent that ■ conditions will permit, *providing of course for visiting periods for the parent not having custody.* This is on the theory that a permanent residence is best for the welfare and happiness of the child." (Our emphasis.)

In the case at bar, we have a very different set of facts than in the above mentioned case. The order granting care and custody on October 14, 1957, to the appellant did not provide any visitation rights to the appellee. Said order was made while appellee and her child were in Colorado. Besides, in the case at bar, permanent custody was not taken from appellant but as the evidence shows, said order granted partial custody of the child to appellee each Saturday between the hours of 12:00 noon and 7:00 p.m., and as above stated, our courts on the basis of "welfare and happiness" of the child may make custody permanent as conditions will permit if visitation rights are accorded "for the parent not having custody."

It was within the discretion of the court in the case at bar, under the evidence to grant appellee visitation rights upon the basis of her petition. It has ■ been held that a parent has a legal right of visitation of her child at convenient and at proper times in a decent manner without molestation, *Burge* v. *Burge* (1878), 88 Ill. 164, and, where no provision is made by the court in a decree permitting a parent, not having custody, to visit the child, the decree should be modified. *Breedlove* v. *Breedlove* (1901), 27 Ind. App. 560, 61 N. E. 797. We reiterate that the court's order of October 15, 1957 and subsequently affirmed, conferred no visitation nor custodial rights upon the appellee.

In the case of *Scott* v. *Scott, supra,* and relied upon by appellant herein, divorce proceedings were first filed in California by appellant and the appellant obtained custody of the son of the principals. Subsequently thereto, appellee brought an action for divorce in Nevada and he obtained a decree thereon, with custody of the child to the appellant. Appellant kept her son with her a part of the time in California, where he went to school, and part of the time he resided with his maternal grandparents in Leedsville, Missouri and in Liberty Center, Indiana, and attended school in those places. Later she sent her son to Terre Haute, and, being unable to contact her parents, invited appellee to meet their son, which he did. The maternal grandparents were also waiting for the child. All agreed that the boy should go home with appellee but later he went to Liberty Center to his grandparents. The grandparents and the son later sent appellee word that he would not return to appellee's home. Later while at a vacation camp, the appellee took his son home and refused to surrender custody of the child. Appellant filed a habeas corpus proceedings and the trial court awarded custody of the child to its father. In this case, the Supreme Court held that, while appellant had legal custody of the child, the court had the duty to determine whether a changed situation is shown by the evidence to justify a change in custody; that the "future welfare and happiness of the child" was paramount. The Supreme Court further said that although the evidence is weak, and the fitness of the appellant unquestioned, there "is some evidence to support the court's finding and judgment."

Of the numerous cases, cited by appellant relative to a change of custody of a minor, it appears that in

all cases excepting *Renard* v. *Renard, supra,* the change of custody embraced a transfer from one person to another, while in the Renard case, the petition sought a radical change in the periods and in the method of visitation privileges, but not a change in custody. The Appellate Court, in this case, held that this court must be "guided by the same rule of law in the decision of this matter as if the petitioner was having an outright modification of custody of children." (See page 247 of above case.)

As stated, the appellant in the Renard case sought a modification of the decree by requesting that the period of summer vacation be lengthened, and that he obtain the child for one-half of that time; that the child be given to him on alternate Christmas vacations; that he be permitted to take the child to his New York home, during the period that he acquired the child; that his mother and sister agreed to help him care for the child, at least part time in New York; that no change in legal custody was sought by the appellant. The court, in denying appellant's petition, determined that the welfare of the child was of paramount importance; that the evidence presented was insufficient to disturb the finding and judgment of the trial court; that there had not been such a change of conditions affecting the welfare of the child, as would justify a modification of the visitation privileges sought by the appellant; and that no abuse of judicial discretion had been shown and its judgment should not be disturbed.

In the case at bar, appellee and appellant were the only witnesses. Some evidence was in conflict and other evidence was not.

The testimony most favorable to the appellee was to the effect that shortly after appellee had received the legal custody of her minor child, on or about October

1, 1957, she took the child to Colorado, and whether appellee knew she was not to take the child from the State, the evidence does not disclose. Be that as it may, on October 14, 1957, appellant in the absence of the appellee was granted sole custody of the child without any visitation rights being awarded to the appellee. On the basis of this decree, appellant by writ of habeas corpus, successfully sought possession of child in Colorado and brought her back to Kentucky. Legal efforts by appellee to change the order of October 14, 1957, were unsuccessful. On December 23, 1957, appellee fatally shot the mother of appellant in her Louisville home. Appellee was acquitted on the charge of manslaughter upon a plea of temporary insanity. The evidence is silent as to what conditions, if any, were the proximate cause which led to this tragedy.

Further, appellee was in a hospital and in jail for some time subsequent to the shooting of appellant's mother, and apparently could not have provided a home for the child even on a partial custody basis. The testimony was to the further effect, that an out of court agreement effectuated through the efforts of the attorneys of the parties, granted visitation rights to appellee in an office of appellant's Louisville attorney on a monthly basis from February 1958 to August 1958. Upon appellee filing her petition for partial custody of her child, appellant abruptly refused further visitation privileges to appellee with her child.

In the course of the trial, appellee testified that she was gainfully employed as a secretary, received $54.00 a week of take home pay, had an automobile, wished to have the child in her home on week ends and would ask no support for the child from appellant while the child was in her custody.

Appellee further testified that she thinks that it is in the best interest and welfare of her child that she be given the right to visit her child, and that it is to the interest and welfare of her child that she be permitted to take the child with her to her home. Appellee said, relative to a question as to how it is to the best interest of her child that she be permitted to take the child out of appellant's home, as follows:

"Going back to the record I said we didn't get along when we were together. When he visited the child in my home, he said we didn't get along. I think it best the child see me on a neutral basis."

Appellant, in his testimony, related at length his difficulty and expense in getting the child in Colorado and its return; also, the shooting of his mother by appellee and her subsequent acquittal on the charge of manslaughter. Further, appellant related the maneuvers of the attorneys for the parties to arrange monthly visitation privileges for the mother with her child at the office of appellant's Louisville attorney. It appears from the evidence that appellant did not relish these visitations; that he was obsessed with the fear that appellee would harm the child, also do him physical injury, and that he acted accordingly by having the blinds drawn and the doors bolted at his home at night time. There were no supporting witnesses for appellant.

Naturally, in the case at bar, the question for this court to determine is whether the trial court abused its judicial discretion in awarding partial custody of the minor child to the appellee.

The Supreme Court in the case of *Gilchrist* v. *Gilchrist* (1947), 225 Ind. 367, 75 N. E. 2d 417, 419, at page 372 said:

". . . The disposition of children is not controlled by hard and fast rules of law but by the exercise of the sound judicial discretion of the court confronted with the problem. Review by an appellate court of such disposition is limited to the question of abuse of judicial discretion. . . ."

. . . .

"The disposition of children presents a delicate and perplexing task which has taxed the wisdom of judges since the day of Solomon. The trial court is better able to arrive at a sound and safe conclusion than can a court of review which has only the cold printed or typed record before it . . . even where evidentiary facts are admitted different inferences and conclusions may be drawn therefrom, and conclusions and judgments may hang upon intangibles and impressions not cognizable to a court of review. The trial court . . . was in better position to weigh the evidence and the inferences therefrom and determine the best interest of the child, and having done so, it is not for us to substitute our judgment for the judgment of the trial court's unless it appear from uncontradicted and undisputed evidence and the only inferences therefrom that the trial court violated its discretion and reached an untenable position. . . ."

In the case of *Maxwell* v. *Maxwell et al., supra,* this appellate tribunal discussed at length and lucidly the matter of the change of the custody of a minor child. The court affirmed the trial court and at page 273 reported the summation of the argument by the appellees, which under Point 5 states:

"5. 'Change of condition' is not the only ground for modifying a divorce decree involving custody. A change may be made in any case for 'good cause shown,' and, under Point 6 appellees continued:

"6. The welfare of the child is the paramount consideration."

70

The opinion of the court in that case inferentially approved these contentions of the appellees.

We acknowledge the Maxwell case as the law in Indiana, but we consider the facts in that case wholly dissimilar to the case at bar.

Statistics now disclose, in general, that where minor children are involved in a divorce proceedings, serious consequences almost invariably arise to thwart the natural development of a happy and satisfying childhood. The interest and welfare of the child in the case at bar seemingly presents no exception.

The placing of the child in the case at bar should produce a status as near as possible to that of a natural home life for the child, and, we are authorized to assume that the inferences, drawn by the trial court from the evidence, sustained it, in its effort to achieve that status for the child here concerned. The trial court had the right to believe and weigh the evidence submitted to it, and to determine therefrom the question of the child's best welfare.

The permissible and reasonable inferences which the court was authorized to draw from the evidence, justified its decision of continued custody by the father, and partial custody by the mother of the herein female child in its early and formative years, which is so essential in a mother-daughter relationship.

We are of the opinion that where, as here, no visitation privileges had been originally granted by the court, and when visitation privileges had been subsequently arranged by the parties on an out of court basis, there exists such conduct of the parties as to provide a proper basis for the entry by the court of the herein decree as to visitation rights in the appellee.

We may again iterate that the court saw the parties, and heard the testimony of each, and that the court was in a much better position than we to determine whether, under the existing circumstances, a change of partial custody ought to be made.

We have carefully examined the evidence, and have considered all the contentions made by appellant, and are of the opinion that under the prevailing legal principles and in light of the situation in which the trial court was placed in the continued controversy with reference as to this case, we are unable to say that it abused its discretion.

The judgment is affirmed.

Pfaff, C. J., Kelley, J., and Gonas, J., concur.

NOTE.—Reported in 175 N. E. 2d 887.