MARTHA LOU (REEVES) MARSHALL *v.* RONALD DAVID REEVES.

[No. 674S112. Filed June 7, 1974.]

*Phillip H. Minton, Thomas J. Jeffers,* of Indianapolis, for appellant.

*Lawrence H. Hinds,* of Indianapolis, for appellee.

ON PETITION TO TRANSFER

HUNTER, J.—This cause arises upon petition to transfer and concerns the modification of a child custody decree. The parties were divorced on October 21, 1970. Custody of the minor daughter was awarded the defendant-mother with bi-weekly visitation rights in the plaintiff-father. The plaintiff was further ordered to pay $12.00 per week child support money through the Clerk's office.

Without notice to plaintiff, the defendant left Indianapolis with the child in April, 1972. Plaintiff's parents subsequently received a letter postmarked Phoenix, Arizona, dated April 26, 1972. The defendant stated she was now remarried and intended to keep the child with her. In a second letter, defendant protested that the plaintiff was delinquent in his support payments and an annual trip to Indiana was the only visitation period she could arrange for plaintiff.

Thereafter, plaintiff filed a "Petition for Rule to Show Cause, Modification of Divorce Decree and for Change of Custody" alleging a decisive change of conditions warranting a modification of the original custody order in the best interests of the child. The defendant defaulted in the modification proceeding, and the following judgment was entered by the trial court:

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that: (1) Defendant be and she is hereby held in contempt of this Court; (a) for removing Andrea Jean Reeves from the jurisdiction of the Court, without approval of the Court; (b) for failing and refusing to grant Petitioner visitation privileges of said child, as ordered by the Court; and (c) for failing and refusing to appear before this Court, as ordered by the Court; (2) Defendant is ordered forthwith to return Andrea Jean Reeves to the jurisdiction of this Court; (3) Petitioner is a fit and proper person to have the exclusive care, custody and control of said child; (4) it is in the best interest and welfare of said child that custody of Andrea Jean Reeves be and the same is ordered placed in the Petitioner, Ronald David

Reeves; (5) the support order heretofore entered on October 21, 1970, is hereby dissolved as of Sept. 5, 1972."

The Court of Appeals, Second District, reversed, 304 N.E. 2d 879, 882.

We grant transfer and adopt in pertinent part the dissenting opinion of Presiding Judge Buchanan as follows. However, before reciting such portions of that opinion here, we deem it necessary to point out what we are *not* holding in the instant case. We believe that violation of a custody decree *alone*, nothing else appearing *(which is not the case here)*, is not a sufficient basis for modifying a child custody decree for it does not, by itself, establish what will serve the best interests of the child which must always be the paramount concern of the court. We reiterate that "the custody of children cannot be used as a means of punishing the parents. It is the children's welfare—not the parents'—that must control the actions of the court." *Wible* v. *Wible* (1964), 245 Ind. 235, 237, 196 N.E.2d 571, 572.

We turn now to the proper disposition of the case at bar:

"The Order of the trial court changing custody of Andrea from Martha to Ronald is supported by this evidence and reasonable inferences therefrom:

"1. During the period of time subsequent to the divorce decree and prior to Martha's departure to parts unknown, repeated disturbances occurred when Ronald attempted to exercise visitation privileges. On one such occasion Martha refused to permit Ronald to take Andrea and sought to bargain his visitation rights for more support payments.

"2. Martha was dismissed from her job—and expressed to Ronald her lack of ambition and unwillingness to work.

"3. On another occasion, Ronald arrived at Martha's apartment early in the morning to pick up Andrea, and there observed, in the presence of the child, a man (Marshall) clad only in his undershorts preparing to shave. Prior to this, Ronald had observed Marshall's car parked outside Martha's apartment at 4:30 A.M.

"4. Approximately five months prior to the modification hearing, Martha took Andrea and accompanied a man,

presumably Marshall, to Phoenix, Arizona. Testimony at trial did not clarify when or if Martha married Marshall. However, in her affidavit subsequently filed with the court Martha admitted that she did not remarry until approximately three months after the move to Phoenix. Martha never notified Ronald of the child's whereabouts.

"5. When Ronald's investigation finally revealed Andrea's whereabouts, he was not allowed to talk with her.

"6. At the time of hearing, Ronald had neither seen nor talked to Andrea since she was removed to Arizona, even though the divorce decree gave him visitation rights every other weekend.

"7. Following the divorce, Ronald had received a college degree in business administration with prospects of promotion and augmented income in his job.

"8. Ronald resided with his parents, who expressed interest in providing a suitable home for Andrea.

\* \* \*

"In this state, case after case by our Supreme Court iterates and reiterates the rule of appellate practice that a trial court's decision as to modification of custody rights will be affirmed unless a clear abuse of discretion is demonstrated by the record. Rose v. Rose (1971), 256 Ind. 440, 269 N.E.2d 365; Bowles v. Bowles (1970), 254 Ind. 536, 261 N.E.2d 228; Winkler v. Winkler (1969), 252 Ind. 136, 246 N.E.2d 375; Mickels v. Mickels (1967), 248 Ind. 585, 228 N.E.2d 20; McKay v. Carstens (1952), 231 Ind. 252, 108 N.E.2d 249; Cox v. Cox (1973) [155] Ind. App. [336], 292 N.E.2d 817 (transfer denied June 8, 1973); Smitley v. Egley (1973), Ind. App., 294 N.E.2d 640; Landing v. Landing (1972), [152] Ind. App. [660], 284 N.E.2d 857; Hall v. Hall (1962), 134 Ind. App. 256, 185 N.E.2d 542; Gatchel v. Gatchel (1961), 132 Ind. App. 56, 175 N.E.2d 887; Renard v. Renard (1956), 126 Ind. App. 245, 132 N.E.2d 278.

"The effect of the majority opinion is to abandon the 'abuse of discretion' standard as the rule of appellate review.

"In its stead they have substituted the 'decisive change in conditions' standard described in Adams v. Purtlebaugh (1951), 230 Ind. 269, 102 N.E.2d 499, and Wible v. Wible (1964), 245 Ind. 235, 196 N.E.2d 571 (and other cases), which is an accepted rule governing *the trial court* in its determination of modification. Differently stated, the ma-

jority have used the trial court 'decisive change in conditions' rule as a fulcrum to weigh the evidence.

"By so doing fuel is fed into the flames of the apparent confusion over the respective roles played by these two rules—one designed for appellate tribunals appeal and the other for trial courts. *See, e.g.,* Note, 47 Ind. L.J. 129 (1971).

"In truth there need be no such confusion. A long line of Indiana cases clearly distinguishes these two standards, leaving to the *trial court* the question of whether or not there has been a decisive change in conditions while limiting the *appellate tribunal* to a determination of whether or not the evidence could serve as a rational basis for the court's findings. Indicative of the distinction is Mickels v. Mickels, *supra:*

> " 'We are not critical of the language used in Brickley v. Brickley, supra, Wible v. Wible, supra, and Adams v. Purtlebaugh, supra, indeed, we subscribe thereto; however, *in determining the import and the decisive character of the evidence, the trial judge before whom the parties and the witnesses appeared, is clothed with the obligation and responsibility of evaluation.* If there is any evidence, or legitimate inferences therefrom, to support the finding and judgment of the trial court, *this Court may not intercede or interfere and exercise or use its judgment as a substitute for that of the trial court.'* (Emphasis supplied.) 248 Ind. at 586, 228 N.E.2d at 20. "See also, Perdue v. Perdue (1970), 254 Ind. 77, 257 N.E. 2d 827; Bowles v. Bowles, supra; Winkler v. Winkler, supra, Cox v. Cox, supra; Renard v. Renard, supra.

"The decided cases on this subject do not justify the conclusion that this or the Supreme Court has or will independently determine whether there has been a 'decisive change of circumstances.' The Supreme Court has, however, reversed custody modifications if a combination of certain deficiencies were present: (1) petitioner's failure to allege a decisive change in conditions; (2) a total absence of evidence tending to prove such changes; and (3) no findings by the trial court that there existed such changes in conditions which warranted modification.

"*See, e.g.,* Adams v. Purtlebaugh, *supra;* Wible v. Wible, *supra;* Morrison v. Morrison (1960), 130 Ind. App. 270, 164 N.E.2d 113; Abair v. Everley (1959), 130 Ind. App. 192, 163 N.E.2d 34.

"Absent the presence of such deficiencies, which is not true in the case before us, the abuse of discretion rule requires us only to determine if the record discloses evidence or reasonable inferences therefrom, which would serve as a rational basis for the finding *by the trial court* that decisive changes have occurred, *i.e.*, that the trial court abused its discretion.

\* \* \*

"The record in this case contains ample and sufficient evidence from which the trial court could logically conclude that a decisive change of conditions affecting Andrea's welfare had occurred which warranted changing custody.

"The record either directly or inferentially shows that Andrea was uprooted from an environment in which she and her father enjoyed a continuing relationship of warmth and affection which provided emotional stability for the child. This vital connection was abruptly severed by Martha without explanation.

"This and other conduct by her indicated a deterioration in her ability or desire to effectively care for Andrea's health and emotional development. After being discharged from her job Martha carried on an illicit relationship, apparently both in Indiana and Arizona, to which Andrea was exposed. The trial court could well have concluded from the evidence that Martha was unable to cope with her own problems and was indifferent or insensitive to the well-being of Andrea.

"Ronald, on the other hand, had improved his situation and could provide a suitable home for Andrea.

"In sum, there was evidence indicating a new set of circumstances affecting the welfare of the child.

"Modification orders have been sustained with less persuasive evidence. In *Mickels, supra,* the evidence merely showed that the petitioner changed jobs and moved in with her parents. The majority of the court rejected the father's contention that this evidence did not show a decisive change under the *Adams-Wible* rule:

" '*We find ample, substantial evidence in support of the trial court's order and judgment* changing the custody of the minor child of the parties from the Appellant to the Appellee. *While we do not regard the evidence as overwhelming, it is enough.* This theory is so well supported by such a long line of cases decided by the appellate tri-

bunals of Indiana that it needs no cited authorities in support of same.' (Emphasis supplied.) 248 Ind. at 586, 228 N.E.2d at 20.

"Other Indiana Supreme Court cases have sustained changes in custody without even referring to the facts as they apply to the decisive change standard. *See, e.g.*, Winkler v. Winkler (1969), 252 Ind. 136, 246 N.E.2d 375, where the court stated:

> " 'The trial court was present and observed the witnesses and exercised its sound judicial discretion as to the welfare of the children. *This court under the well established rules will not weigh the evidence,* and as appellee has pointed out, there is substantial evidence of probative value to sustain the finding and judgment of the trial court, and *since appellant has shown no abuse of discretion, the judgment of the trial court will not be reversed.'* (Emphasis supplied.) 252 Ind. at 140, 141 246 N.E.2d at 377.

"The court in Brickley v. Brickley (1965), 247 Ind. 201, 210 N.E.2d 850, stated the reason for upholding the decision of the trial court in custody matters:

> " 'While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that *we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence,* or that he should have found its preponderance of the inferences therefrom to be different from what he did.

> " 'On appeal it is not enough that *the evidence* might support some other conclusion, but it *must positively require the conclusion contended for by appellant before there is a basis for reversal.'* (Emphasis supplied.) 247 Ind. at 204, 210 N.E.2d at 852.

"To constitute an abuse of discretion, the trial court's decision must be one that is 'clearly *against the logic and effect of the facts and circumstances before the court,* or the reasonable, probable, and actual deductions to be drawn therefrom.' (Emphasis supplied.) McFarlan v. Fowler Bank City Trust Co. (1938), 214 Ind. 10, 12 N.E.2d 752, DuFour v. DuFour (1971),

[149] Ind. App. [404], 273 N.E.2d 102, at 106 (dissenting opinion)." Dissenting Opinion, 304 N.E.2d 879, 887.

While it is apparent that the evidence may have supported a conclusion other than the one reached by the trial court, the evidence also serves as a basis for the trial court's decision when interpreted most favorably thereto. We find that the trial court did not exceed its discretion. We therefore hold that the trial court's judgment should be affirmed.

Arising from the factual situation here presented, another serious question should be addressed by this Court.

The record before us on this appeal, from the custody decree of the trial court, is replete with pleadings filed by the appellant and motions for continuances that were granted from time to time, and finally, the withdrawal of attorneys from her case and the withdrawal of the pleadngs, leaving only the complaint of the appellee before the court. The appellant was defaulted and custody was granted to the appellee.

The long series of events of the appellant's failure to appear before the court impels us to direct our attention to the serious problem facing all of the trial courts in Indiana and many lawyers, in attempts to enforce visitation rights of one party or the other.

We are cognizant of the fact that the appellant was advised by her attorneys in Indiana and Arizona that since the decree was silent *re* the removal of said child, Andrea, from the jurisdiction of the court, that she had a legal right to do so. It is to this problem that we feel impelled to address ourselves.

The original decree of the court awarded the custody to the appellant and also conferred upon the appellee bi-weekly visitation rights at reasonable times and places. Since divorce matters, and particularly custody proceedings, are within the scope of equity, such a

decree impliedly grants to the party receiving such visitation privileges the right to exercise the same, and a party to such a decree may not make a unilateral determination that will effectually deny such a party's rights to exercise the visitation privileges conferred by the decree.

Therefore, we hold that even though the decree is silent concerning the question of removing the child from the continuing jurisdiction of the trial court, to give full force and effect to said decree, such removal can only be made with prior judicial sanction, either by agreement of the parties approved by said court, or after due hearing before the court. Consistent with the idea of prior judicial sanction, the court may impose such terms and conditions as it may deem to be adequate and equitable in order to effectuate the provisions thereof. Failure to recognize and approach this problem as we have would be to approve such actions and countenance an unchecked license to flaunt and thwart the continuing jurisdiction of the court in child custody proceedings.

We are not hereby advocating a principle that such a unilateral denial of visitation rights of another, by removal from the jurisdiction of the court, is *ipso facto* a reason for change of custody; and we further affirm the principle that a mere finding that an offending party's disobedience of a court order is contemptuous is not tantamount to a finding of unfitness of such party as affecting his or her right of custody. Such factors are not necessarily determinative of the best interests and welfare of a child; however, such factors, in conjunction with other facts, may be conclusive of a change of circumstances concerning not only the fitness of the party, but also the best interests and welfare of the child.

For all the foregoing reasons, the judgment of the trial court is hereby affirmed.

Arterburn, C.J., Givan and Prentice, JJ., concur; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DEBRULER, J.—I agree with the opinion of the Second District Court of Appeals that the findings and judgment of the trial court are not supported by sufficient evidence, and that a new trial should be granted, and therefore vote to deny transfer. Even upon consideration of the so-called "essential facts" outlined in eight subparagraphs, quoted in the majority opinion and incorporated from Judge Buchanan's dissenting opinion, I fail to see how those facts even minimally support the decision of the trial court to change custody from the mother, such custody inquiry focusing as it does upon whether a substantial and material change in conditions affecting the welfare of the child have occurred, and whether such change is of such decisive character as to make a change in custody necessary for the welfare of the child. *Huston* v. *Huston* (1971), 256 Ind. 110, 267 N.E.2d 170; *Rose* v. *Rose* (1971), 256 Ind. 440, 269 N.E.2d 365; *Perdue* v. *Perdue* (1970), 254 Ind. 77, 257 N.E.2d 827; *Wible* v. *Wible* (1964), 245 Ind. 235, 196 N.E.2d 571.

NOTE.—Reported at 311 N.E.2d 807.