**In re the MARRIAGE OF Eugene Wilford McDONALD, Appellant-Petitioner,**

**and**

**Margaret Helen McDonald, Appellee-Respondent.**

**No. 3–580A125.**

Court of Appeals of Indiana, Third District.

Jan. 19, 1981.

Rehearing Denied March 12, 1981.

Thomas J. Brunner, Jr. and John C. Hamilton, Parker, Brunner & Hamilton, South Bend, for appellant-petitioner.

James R. Kuehl, South Bend, for appellee-respondent.

STATON, Judge.

This civil action concerns the dissolution of the marriage of Eugene Wilford McDonald and Margaret Helen McDonald. A decree of dissolution of marriage was entered which provided for the distribution of the assets and liabilities of the parties, custody and support of their minor child, and the payment of attorney fees.

On appeal, Dr. Eugene McDonald raises the following three issues for our consideration:

1. Did the trial court abuse its discretion in its division of the marital property?

2. Did the trial court err in providing a contingent interest in property to one party while leaving to the other party the discretion when, if ever, such interest might be liquidated?

3. Did the trial court abuse its discretion in its award of temporary child support?

We affirm in part and reverse and remand in part.

## I.

### Division of Property

Dr. McDonald contends the trial court failed to make a just and reasonable disposition of the marital property as required by IC 31–1–11.5–11.[1] He argues that he has been saddled with most of the liabilities of the marriage while Mrs. McDonald received equity greater than the equity of the marital property taken as a whole; therefore, he reasons that the court has abused its discretion by enlarging the marital estate with assets in which the parties did not have a present interest at the time of division. We disagree.

The disposition of the marriage property is within the sound discretion of the trial court. *Irwin v. Irwin* (1980), Ind. App., 406 N.E.2d 317. A just and reasonable division of the property does not require the court to divide the property equally between the parties. *Id.*

Property refers to physical objects such as cars, houses, and furniture. It also encompasses the complex group of jural relations between the owner of the physical object and all other individuals. *Nelson v. LaTourrette* (1961), 132 Ind.App. 584, 178 N.E.2d 67. When the trial court divides the property of the marital estate, it must also divide up these relationships. It may separate the debt relationship of the object from the equity relationship of the object. In other words, the court can give one party the debt of the property while giving the other party the physical object.

We will reverse the trial court's division of the property only upon a showing of an abuse of the trial court's discretion.

1. The relevant part of the statute states:

"(a) In an action pursuant to section 3(A) [31–1–11.5–3(a)] of this chapter, the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, either by division of the property in kind, or by setting the same or parts thereof over to one [1] of the spouses and requiring either to pay such sum, either in gross or in installments, as may be just and proper, or by ordering the sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale.

"In determining what is just and reasonable the court shall consider the following factors:

"(1) The contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

"(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

"(3) The economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

"(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property;

"(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

*Geberin v. Geberin* (1977), Ind.App., 360 N.E.2d 41. To constitute an abuse of discretion, Dr. McDonald must show that the trial court's decision was one which was "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807, 812.

We will not reweigh the evidence; we will consider only that evidence and the reasonable inferences drawn therefrom which is most favorable to the appellee, Margaret Helen McDonald. *Jackman v. Jackman* (1973), 156 Ind.App. 27, 294 N.E.2d 620. Even though the evidence might support a conclusion different from the one reached by the trial court, we cannot substitute our judgment for that of the trial court. *Geberin, supra.*

The trial court divided the marital property[2] in the following manner:

2. In its dissolution decree, the trial court set forth the marital property with stipulated and unstipulated values as follows:

| Stipulated | $ |
|---|---|
| Life insurance cash value | 350.00 |
| Family dwelling-range of $60,900 to | 65,000.00 |
| Home furniture | 2,500.00 |
| Husband's office furniture | 3,358.00 |
| 1979 Mark V automobile | 10,750.00 |
| 1976 model Datsun automobile | 2,487.50 |
| Wife's diamond-set pendant range of $900 to | 1,900.00 |

| Unstipulated | $ |
|---|---|
| Husband's gross accounts receivable at separation | 18,000.00 |
| of which | 10,434.00 |
| had been collected at the date of trial and of which an additional | 1,500.00 |
| is estimated to be collectible | |
| Husband's balance in office account at separation | 4,500.00 |

The parties' liabilities were as follows:

| | |
|---|---|
| American National Bank on Mark V | 8,090.36 |
| American National Bank mortgage on dwelling | 48,720.00 |
| American National Bank commercial loan | 15,079.00 |
| Ries Furniture Co. | 2,200.00 |
| Internal Revenue Service | 5,700.00 |
| Sears, Roebuck and Company | 780.00 |
| Indiana University Credit Union | 900.00 |

*Wife*

Finally dwelling subject to her paying the mortgage

Household Furniture, furnishings, appliances, fixtures, equipment, and supplies—husband responsible for debt on these items

Lincoln Mark V Automobile subject to her paying the indebtedness on it

Diamond-set pendant necklace

*Husband*

Datsun Automobile

Office Furniture and Equipment

Office Accounts Receivable

Life Insurance Cash Value

Dr. McDonald was ordered to pay the commercial loan,[3] the furniture account, Sears and Roebuck, the I.U. Credit Union[4] and the 1978 tax liability.[5]

We can not say the trial court abused its discretion. The court considered the factors set forth in IC 31–1–11.5–11.[6]

The trial court noted that the wife believed the assets of the parties amounted to $118,-622.00, liabilities $81,107.05, leaving a net of $37,514.95 and that the husband believed the assets amounted to $91,570.00, liabilities to $82,172.00, leaving a net of $9,398.00. The trial court stated in its decree that the true net value of the marital assets lies between the estimates of the parties depending upon treatment of taxes and the value of the family dwelling and Mark V on sale.

3. The bulk of this loan was used to open his practice. $2,400 was used for the downpayment on the Mark V. $5,000 was used for the downpayment on the house.

4. This loan had been used for personal expenses and taxes.

5. This tax liability was the result of his moonlighting, which supported his gambling habit and trips the couple had taken.

6. The factors listed in IC 1971, 31–1–11.5–11 (1979 Supp.) are as follows:

"(1) The contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

"(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

"(3) The economic circumstances of the spouse at the time the disposition of the

Mrs. McDonald was ordered to pay the debt on the items she received except for the debt on the household furniture. Dr. McDonald was ordered to pay the debt on "his" assets and approximately $5,300 of debt on assets he did not receive. The court did not award to either party property in which they did not have a present interest at the time of division. The court did not award property in excess of the marital estate.

## II.

### Lien on Residence

The trial court ordered that the family dwelling should be transferred to Mrs. McDonald. Upon its sale, she must pay $5,500 to Dr. McDonald, which sum is a lien on the family dwelling. Dr. McDonald argues that it was improper of the trial court to provide him this contingent interest in the property while leaving to Mrs. McDonald's discretion when, if ever, such interest might be liquidated. He cites the recent case of *Henderson v. Henderson* (1980), Ind.App., 401 N.E.2d 73.

■ His point is well taken. As this Court said in *Henderson, supra*, it is reversible error to delegate to one of the parties the power to decide when, if ever, to divide the property absent an agreement entered into by the parties as to the disposition of their property.

On this issue we reverse and remand.

## III.

### Temporary Support

Prior to the trial on the petition of dissolution of marriage, the trial court ordered Dr. McDonald to pay $500 a week temporary support and maintenance for his daughter and wife.[7] The trial court, in its Order of Distribution after its decree dissolving the marriage of the McDonalds, ordered Dr. McDonald to pay his arrearage on the temporary support order. He now argues that the trial court abused its discretion because its award of temporary support is without foundation in law or fact. We disagree.

■ The determination of temporary support and maintenance is committed to the sound discretion of the trial court. On appeal, we will consider the evidence most favorable to the court's decision and will reverse only where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Marshall, supra.*

■ Child support is designed to provide for a minor the standard of living he would have enjoyed had the marriage not been dissolved. *Wendorf v. Wendorf* (1977), Ind. App., 366 N.E.2d 703. The court must consider the needs of the receiving party and the resources available to meet them; however, it is not an abuse of discretion per se when a temporary order for support requires the person paying support to exceed his or her present earnings and invade assets or borrow funds. *Id.*

■ The evidence most favorable to the trial court's decision reveals that Dr. McDonald had made $7,500 to $10,000 a month gross in the one year before the hearing and had made over $10,000 gross in the month of February, 1979. Living expenses for the mother and daughter were estimated to be $2,613 a month.[8] The order for

property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

"(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property;

"(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

7. Mrs. McDonald had petitioned for the temporary support and maintenance as allowed by IC (1971), 31–1–11.5–7.

8. The judge's specific questions about expenses not brought up by the parties orally demonstrates that he had detailed information before him that the parties must have provided him. As this information is not in the record before us, we did not consider it in arriving at our decision. We mention this missing information only to remind the parties of the importance of making a complete record for appeal.

$2,000 a month support and maintenance was not an abuse of discretion. These facts standing by themselves are enough for the court to form an opinion regarding the standard of living the child would have enjoyed had the marriage not been in the process of being dissolved.

We affirm in part and reverse and remand in part.

HOFFMAN, P. J., concurs.

GARRARD, J., concurs with opinion.

GARRARD, Judge, concurring.

I agree with the conclusions arrived at by Judge Staton on parts I and II of his opinion. However, concerning the division of property I think it should be pointed out in connection with Judge Montgomery's order that there was evidence that (a) the husband dissipated some $15,000 of his earnings during the marriage in gambling activities; and (b) he was a physician board certified in internal medicine and pulmonary medicine. There was evidence of his earning ability as such and of his wife as a nurse. I believe these factors add considerable perspective to the court's award since IC 31–1–11.5–11 provides for consideration of both in effecting a just and reasonable disposition of marital assets.

Concerning part III, I cannot agree that the propriety of the interlocutory support order is now available on appeal. The order was appealable when entered pursuant to Indiana Rules of Procedure, Appellate Rule 4(B)(1). No such appeal was perfected and, of course, the temporary order expired with the entry of final judgment. That the court ordered the deficiency remaining at the date of dissolution paid does not, in my view, revive the foregone issues of appealability concerning the propriety of the original award.

I therefore concur in the result reached.