ROBB, Judge,
concurring in result.
I concur in the result reached by the majority, but write separately to comment on a troubling aspect of the specific proceedings here and relocation cases in general.
Pursuant to the relocation statutes, Mother was required to provide notice of her intent to move ninety days prior to the date she intended to relocate. Ind.Code § 31-17-2.2-3(a)(l)(B). Mother did not file her notice at least ninety days prior to her intended relocation; in fact, she filed the notice on June 17, 2011, stating that she intended to move oh July 1, 2011. Upon receiving that notice, Father had sixty days within which to object and seek an order preventing relocation. Ind.Code § 31-17-2.2-5(a). Father filed his objection on June 29, 2011, and the trial court set a hearing for July 7, 2011. At the evidentiary hearing regarding relocation, Mother was to have the burden of proof “that the proposed relocation is made in good faith and for a legitimate reason,” Ind.Code § 31-17-2.2-5(c), and if she met that burden, Father would then have the burden “to show that the proposed relocation is not in the best interest of the child,” Ind.Code § 31-17-2.2-5(d).
Based on the averments in Mother’s July 1, 2011, motion to continue the hearing, see op. at 839-40 (quoting Appellant’s Appendix at 49 where Mother states she had relocated “in the past two days”), she had moved to Georgia even before July 1 and certainly before a hearing was held regarding her “intent” to relocate. In denying Mother’s motion to continue the hearing, the trial court specifically noted that she had failed to comply with the relocation statute’s notice provisions. Nonetheless, a hearing was not held on that day to allow the parties an opportunity to reach an agreement, though they were unable to do so. For a variety of reasons, including multiple motions to continue filed by both Mother and Father, a hearing was not held on the relocation until August of 2012. In the interim, several emergency motions regarding holiday and summer visitation were heard by the court, including a hearing on June 28, 2012, at which the court specifically noted:
It is clear to the Court that the fact [Mother] lives in Georgia with the child of this relationship is the obstacle to regular parenting time. [Mother] moved without appropriate notice and opportunity for [Father] to be accorded a hearing to address visitation issues in advance.
Appellant’s Appendix at 71.
The trial court finally heard evidence regarding the first prong of relocation on August 8, 2012, and issued an order on October 15, 2012, finding that Mother had *848 met her burden of proving a good faith and legitimate purpose for her move and confirming a hearing on the second prong for October 17, 2012. Again, due to multiple motions to continue (most if not all filed by Father), the best interests hearing was postponed for nearly a year, finally being held on July 30, 2013, at which time Mother and Child had been living in Georgia for over two years. The trial court references this fact in its October 28, 2013, order and in part relies on the Child’s situation in Georgia in finding that Father has not met his burden of establishing relocation is not in her best interests— noting that Mother has been the primary caregiver, that the Child has a close bond with her maternal grandmother and aunt and uncle with whom she lives, and noting some of the activities Child participates in Georgia.
Mother’s primary stated reason for moving was to remain close to her mother and siblings, who she characterized as playing “a very important role in [Child’s] life.... They provide babysitting, daily ... support, extra transportation, and support to extracurricular activities when I have to work. Without our family in our daily lives things would be very hard for [Child] as well as myself.” Appellant’s App. at 39-40. In part, Mother was required to rely on her family because she was denying Father the opportunity to participate more fully in Child’s life, and one would have hoped that Father would have had (and taken) the chance to play a similar role in supporting Mother and Child. But as the majority states, it seems clear that Mother legitimately wanted to be near her immediate family and she and Child benefit from those close relationships. See op. at 843. While I believe we must set the bar for the relocating parent above merely stating a reason for moving, I also acknowledge that we cannot set the bar too high because the best interest of the child determination is paramount. See id. at 842—43 (citing Gilbert v. Gilbert, 7 N.E.3d 316, 326 (Ind.Ct.App.2014) (Robb, J., dissenting)).
However, the fact that Mother may have had a good faith and legitimate reason for moving does not necessarily mean that she had a pressing reason for moving in advance of a hearing and court determination in accordance with the relocation statute. It is clear from the language of the statute that a parent is not to relocate prior to a hearing regarding whether the relocation is in the child’s best interest. See Ind. Code § 31-17-2.2-5 (referencing the burden of proof at a hearing regarding the “proposed relocation”). Moreover, this is a long-standing common law rule, as well. Even before our statutes formally addressed relocation, caselaw held that an order granting a party visitation privileges impliedly grants the right to exercise those privileges, and the other party “may not make a unilateral determination that will effectually deny such a party’s rights to exercise the visitation privileges....” Marshall v. Reeves, 262 Ind. 107, 117, 311 N.E.2d 807, 813 (1974). In order to give effect to the original order, removal of the child from the jurisdiction “can only be made with prior judicial sanction, either by agreement of the parties approved by said court, or after due hearing before the court.” Id. (emphasis added).
Mother offered no evidence regarding why her move had to be made at a certain time and certainly no evidence justifying her move not only in advance of a court hearing, but also well in advance of the timeline provided in the statute. This was not a matter of Mother or a subsequent spouse being transferred for work purposes. See, e.g., Kietzman v. Kietzman, 992 N.E.2d 946, 950 (Ind.Ct.App.2013) (affirming trial court’s grant of mother’s request to relocate with child *849 and new husband, whose job had offered him an assignment in China). And even though Mother ultimately found a higher paying job in Georgia, she did not begin looking for a job until after she had decided to move so that was not a precipitating factor. See, e.g., Nelson v. Nelson, 10 N.E.3d 1283, 1287 (Ind.Ct.App.2014) (holding Mother’s intention to move to South Carolina in part to seek employment when she was unable to find employment in Indiana was a good faith and legitimate reason for relocation). I believe Mother’s move in violation of the terms of the relocation statute alone justifies closer scrutiny of her reasons for the move. And Mother’s hasty move coupled with the court’s reliance — however small — on the time she and the Child have lived 800 miles away from Father as support for its decision despite acknowledging her disregard makes a mockery of the statute. If a parent can ignore the requirements of the law, move the child without court approval, and then claim “primary caregiving” and “bonding” as a justification for staying with that parent being in the child’s best interest — and moreover, if the court can acknowledge all of this and yet in effect reward the parent by approving what they have already done — then the relocation statute has no meaning and no teeth.[3] I find it particularly egregious in this case, where it is clear from Mother’s prior conduct in spuriously denying Father parenting time prior to her move and the court intervention required to ensure parenting time since, that she will not encourage or facilitate a relationship between Father and Child especially now that distance is an easy excuse.
Had Father been more aggressive in pursuing his rights and less complieit in the lengthy delay in this case, this would be a dissent rather than a concur in result. However, he apparently did not actively protect his relationship with Child even prior to Mother’s move by pursuing contempt or other sanctions when she denied him parenting time for nearly a year, he did not seek an emergency temporary order to return Child to Indiana pending an evidentiary hearing and judicial resolution, and he filed repeated motions to continue that contributed to the time it took for the court to rule on this matter. Neither party has comported itself well, and we are left with no good solution in this case. However, considering all the circumstances but most particularly considering the best interest of Child at this late date, I concur in the result reached by the majority affirming the trial court’s orders.

. I also believe the two year delay from when Mother filed her notice of intent to relocate to when a final order was issued is unconscionable on the part of both the parties and the court. The parties' numerous requests for continuance certainly played a substantial part in the delay, but the court also contributed to it. At the conclusion of part one of the hearing, the court requested the parties submit proposed findings, and as counsel discussed how soon they could do so, the court stated, "As far as I’m concerned, there is no real rush because I will probably; it will be a few several weeks before I get to it, to be perfectly honest.” Transcript at 58. In fact, the court did not issue its findings for two months, and a second hearing was required thereafter to fully adjudicate the issues before the court. Although careful consideration is appreciated, some sense of urgency would have been appropriate. Had the court ultimately found in Father’s favor, the disruption to Child's life would have been substantial two years down the road, even if Mother had elected to move back to Indiana in order to avoid a change of custody.